PLAINTIFF in error as plaintiff brought action to enjoin the enforcement of chapter 14, Session Laws of the Extraordinary Session of 1933. The chapter is an act entitled "An act to provide additional emergency relief funds by the imposition of additional fees upon the registration of motor vehicles, trailers and semi-trailers, during the remainder of the year 1933, and during the year 1934, and providing for the disposition of the proceeds thereof." The defendants in error are officers of the state charged by the act with the enforcement of its provisions. A demurrer to the complaint was sustained, the plaintiff elected to stand on the complaint, and judgment was entered against him. Error is assigned to the sustaining of the demurrer and the judgment.
It is alleged in the complaint that the plaintiff is the owner of an automobile, and as such required to register the same; that in compliance with law he has registered it and paid $10.05 to the proper officer and has received a license or certificate entitling him to use and operate the automobile for and during the year 1933 without further exaction except general property tax, which it is also averred has been paid; that notwithstanding, the defendants threaten to impose an additional tax of $30, and to invoke penalties unless the same be paid on or before September 1, 1933, under the provisions of the act mentioned. The plaintiff further alleges that the act contravenes, and is in conflict with, section 21, article V, section 3, article X, section 7, article X, and section 25, *Page 403 
article II, of the Constitution of the state of Colorado, and article V, and section 1, article XIV, of the Amendments to the Constitution of the United States.
In the view we have it will be necessary only to consider the application to the act of sections 3 and 7 of article X of the Constitution of the state of Colorado. Section 3, article X, provides: "All taxes shall be uniform upon the same class of subjects within the territorial limits of the authority levying the tax, and shall be levied and collected under general laws, which shall prescribe such regulations as shall secure a just valuation for taxation of all property, real and personal * * *."
Section 7, article X, provides: "The general assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may by law, vest in the corporate authorities thereof respectively, the power to assess and collect taxes for all purposes of such corporation."
The act recites in its first section the belief of the General Assembly that an emergency exists requiring its enactment so that funds to relieve the needy and destitute citizens of the state may be obtained. To that end, in section 2, "every owner of a motor vehicle, trailer or semi-trailer, intended to be operated upon any highway in this state * * * shall, before the same is operated, apply" for and obtain registration thereof. Section 3 provides that on or before September 1, 1933, and on or before January 31, 1934, the owner of the vehicle shall pay for its registration, "in addition to any fees required by section 42 of the Uniform Motor Vehicle Act, or any other law" and "based upon a valuation fixed by the Colorado Tax Commission * * * additional fees" upon a graduated scale, commencing with $2 on vehicles having "a certified value" not exceeding $50, and ending with $60 on vehicles valued at $5,000 and over. The Colorado tax commission is directed to certify to the motor vehicle department a list of valuations "computed in substantial conformity with the present system and practice *Page 404 
of the tax commission and the several county assessors in the state in assessing the value of such vehicles for tax purposes," and the motor vehicle department is directed to furnish all owners who register their vehicles "with an appropriate device to be attached to their number plates to evidence" payment, and is authorized to retain not to exceed ten cents of the amount of each registration to defray the cost of the device. Section 5 directs the "duly authorized agents of the Department," by which is meant the several county clerks, to remit to their respective county treasurers the amounts collected by them for such registrations. The second paragraph of section 5 is as follows: "All moneys so paid to the county treasurers shall be credited to a fund to be known as the `county emergency relief fund,' and shall be expended under the direction of the board of county commissioners of each county, for work relief and direct relief to the unemployed, and for the purpose of removing destitute citizens from direct to work relief, and for no other purpose." Section 6 authorizes the motor vehicle department to make necessary rules and regulations; section 7 provides penalties for violation of the act; section 8 appropriates $500 for the expense of the commission and department in preparing, printing and delivering valuation lists to the latters' agents; and sections 9 and 10 are in the usual form of the so-called safety and emergency clauses.
Counsel in this case and in Consolidated MotorFreight, Inc. v. Bedford, 93 Colo. 440, 26 P.2d 1066, argued together, have favored us with excellent briefs of their views, and have cited cases from many jurisdictions. The answers to the questions presented are, however, we believe, largely to be found in our own reports, and we feel no need of reviewing the many authorities presented. Indeed, the varying provisions of constitutions and of statutes render such pursuit in the main an uninstructive task. General principles, largely to be *Page 405 
deduced from our former decisions, should suffice, for in the last analysis the case is not a vexed one.
[1, 2] The principal difficulty is to determine the nature of the imposition made by the act. The General Assembly has denominated it a fee, but as has been many times held the language of the legislature is not determinative. The distinction between a property tax and an excise tax is not determined by the style of the enactments, but by the differences which exist, and when, as here, it is thought that the two nearly approach each other, they may usually be distinguished by the respective methods adopted of laying them and fixing their amount. 26 R. C. L. 35. Thus, where the tax is imposed directly by the legislature without assessment, and is measured by the extent a privilege is exercised by the taxpayer without regard to the nature or value of his assets, it is an excise; but if the tax be computed upon a valuation of property and assessed by assessors, although a privilege may be included in the valuation, it is a property tax. Id.
[3-6] It appears plain to us that the act imposes a property tax. It contains no veiled phrases that might lead one to doubt its purpose. It is a measure for revenue. No word of regulation, of license. Frankly it details a need for revenue and frankly it seeks to derive that revenue from a tax upon automobiles, assessed upon a scale of values, to be determined by a commission selected for that purpose. No other kinds of personal property are made the subject of the tax; motor vehicles alone are to bear the burden. It is true that the licensing of motor vehicles and the imposition of an excise tax in addition to the general property tax does not contravene the Constitution. Ard v. People, 66 Colo. 480,182 Pac. 892. That case goes beyond the rule announced in many jurisdictions which limit excises to an amount reasonably calculated to defray the expense of licensing and regulation, but it contains language that distinguishes it from the case at bar and supports besides the position *Page 406 
that the act here involved cannot be upheld. At page 484 we said that "The third and last objection urged by the plaintiff in error is that `The Motor Vehicle Act is an attempt under the police powers of the state to pass a revenue measure.' This objection cannot be sustained. A revenue measure is one which has for its object the levying of taxes in the strict sense of the words. If the principal object is another purpose, the incidental production of revenue growing out of the enforcement of the act will not make it one for raising revenue." But if the principal and only purpose of an act is to produce revenue, and the act now before us has that purpose alone, then the police power of the state fails and the constitutional inhibitions concerning uniformity are controlling. The exaction of a license fee with a view to revenue is not the exercise of the police power, but of the power of taxation.Cooley's Constitutional Limitations (6th Ed.) 242. The General Assembly is not at liberty to impose a property tax upon the theory that it is imposing an excise tax, for "While a license tax may be levied upon such business or occupations as are proper subjects of municipal regulation and control, and the purpose of such tax is for regulation or restraint, yet when all the elements of regulation or restraint are wanting, and the primary purpose of the act is the raising of revenue only, then it loses its character as a license tax and becomes a tax for revenue. Only those cases where regulation is the primary purpose can be specially referred to the police power." Board of Com'rs Kiowa County v. Dunn,21 Colo. 185, 40 Pac. 357. So free from doubt is the matter that we are constrained to and do hold that the tax imposed by the act is a property tax. And since it is a property tax and is manifestly not "uniform upon the same class of subjects within the territorial limits of the authority levying the tax," the act must be and is held to be repugnant to section 3, article X, of the Constitution and therefore void. We do not wish it to be thought that in arriving at our conclusion we have overlooked Denver *Page 407 Co. v. Denver, 21 Colo. 350, 41 Pac. 826, and Altitude OilCo. v. People, 70 Colo. 452, 202 Pac. 180, for we have considered them and find them without point here. The first of those cases goes only to the proposition that under its then charter the city of Denver could lawfully levy a license tax on privileges or occupations, and that such a tax was not prohibited by section 3, article X, of the Constitution. The second case concludes that the act there under consideration was an excise tax, a decision we find no occasion to dispute.
[7-9] It remains to be determined whether the act also offends against section 7, article X, upon the ground that it is an attempt by the General Assembly to impose a tax for county purposes. It seems that it does so offend. No serious question can be raised that the primary purpose of the act is to afford a fund from which the needy and destitute may receive aid, and no serious question can be raised that the duty to care for persons so afflicted rests upon the several counties. The statutory enactments upon the subject (§§ 7204, 8907, C. L. '21) and our judicial knowledge of the fact that that duty has always been upon the counties, makes the pronouncement certain. Hence, it follows irresistibly that the General Assembly was without power to impose the tax for the purpose it so unmistakably announced in section 5 of the act, and that having sought so to do, its enactment is void. Nor have we in this connection failed to considerAltitude Oil Co. v. People, supra, but again we find it pointless to this consideration. While in that case, as we have ascertained from the briefs, it was urged that an unlawful imposition had been made for county purposes, the court did not consider the problem in its opinion. In argument here it was suggested that since the fund created by that act was distributable to the counties according to their respective mileages of state routes and state highways a state and not a county purpose was involved. We need not determine that now, and since it was not determined in the Altitude Company case it may *Page 408 
properly remain undetermined until it comes directly before us for decision.
[10] The conclusion that we should be obliged to declare the act void has been reached with heavy hearts. We are far from insensible of the emergency which the General Assembly has said exists. Yet we must declare without hesitation that which our function demands. We pronounce as the most certain of law that there has never been, and can never be, an emergency confronting the state that will warrant the servants of the Constitution waiving so much as a word of its provisions. Armed men may destroy the government. Military rule, or the rule of the mob, may replace the orderly processes that have been our fortune since sovereignty was granted us by the United States. But no species of reasoning, no ingenuity of construction, no degree of emergency, can persuade us that the Constitution is without potency or dissuade us from performing our duty as its sworn officers.
Let the order be that the judgment of the trial court is reversed, with instructions to overrule the demurrer.
MR. CHIEF JUSTICE ADAMS, MR. JUSTICE CAMPBELL and MR. JUSTICE BURKE concur.
MR. JUSTICE BUTLER, MR. JUSTICE BOUCK and MR. JUSTICE HOLLAND dissent.