## No. 27731

**Rancho Colorado, Inc., a Colorado corporation, d/b/a Gate n' Green; Westlear Company, a limited partnership; Greenway Park, Inc., a Colorado corporation, d/b/a Melody Homes; Kent Construction Company; Land, Inc.; and E. S. L. Corporation v. City of Broomfield, a municipal corporation of the State of Colorado**

(586 P.2d 659)

Decided November 6, 1978. Opinion modified and as modified rehearing denied December 4, 1978.

Goldstein, Armour & Lonnquist, P.C., Abe L. Hoffman, Alan A. Armour, for plaintiffs-appellees.

Tallmadge, Tallmadge, Wallace and Hahn, Andrew S. Armatas, C. Thomas Bastien, David J. Hahn, for defendant-appellant.

*En Banc.*

MR. JUSTICE LEE delivered the opinion of the Court.

This is an appeal from a judgment in a class action in which the Boulder County District Court invalidated two revenue ordinances of the City of Broomfield. The court ordered a refund of the taxes paid under the invalid ordinances to the members of the class plaintiffs represent. We affirm the judgment.

The district court first invalidated Ordinance No. 200, insofar as it imposes a use tax on building and construction materials purchased outside the city for use, storage, or consumption within the city, because of the confiscatory nature of the tax and the invalid procedure by which it was collected.

Secondly, the district court invalidated Ordinance No. 211, which imposed a municipal services expansion fee. The court held that the fee was actually a property tax which Broomfield, as a statutory city, had no authority to enact.

I.

The district court held that section 4-2 of Ordinance No. 200[1] created a confiscatory tax of sixty percent and therefore was in direct violation of section 29-2-108, C.R.S. 1973, which mandates that the total use tax imposed by any city shall not exceed seven percent. The city urges that we construe sections 4-1 and 4-2 to impose only a levy of one percent of sixty percent of the estimated total cost of the project. However, as

---

[1] Section 4 of Ordinance No. 200 provides:

"4-1. There is hereby imposed on the privilege of storing, using or consuming any construction and building materials of every kind and form purchased outside the City, for use, storage, or consumption within the City, a Use Tax of one per cent (1%) of the retail purchase price of said construction or building materials.

"4-2. Said Use Tax shall be paid by Estimate through the payment to the City Director of Finance of an amount equal to sixty per cent (60%) of the total cost of the project as indicated on the application for a city building permit and shall be evidenced by the issuance of a building permit by the City Building Inspector which, once paid, shall not be the subject of further audit or investigation by the City.

"4-3. As an alternative to the estimate procedure provided in 4-2 above, payment of said use tax may be made by the filing by the applicant for a building permit of an affidavit stating that the applicant intends to purchase all building or construction materials necessary for the project described in the building application from a licensed retailer located within the City of Broomfield.

"4-4. Every applicant for a building permit who utilizes the alternative procedure provided in 4-3 above, shall maintain and preserve detailed purchase and receipt records which shall be subject to inspection and audit by the City Director of Finance or his authorized agents and any unpaid taxes due shall be subject to collection.

"4-5. The collection and administration of the use tax imposed by this section shall be performed by the City Director of Finance in substantially the same manner as the collection, administration and enforcement of the Colorado Sales and Use Tax as provided in Article 10, Chapter 138 Colorado Revised Statutes 1963, as amended. The City Director of Finance is hereby authorized to promulgate such additional rules and regulations as may be necessary for the proper administration or enforcement of this Section."

conceded by the city in its brief, section 4-2 suffers from "drafting sickness." We find the sickness to be fatal.

█ In so holding, we are mindful that in construing statutes or ordinances courts should be guided by the legislative intent. *Posey v. District Court,* 196 Colo. 396, 586 P.2d 36. If, however, in analyzing a taxing statute or ordinance, there appears any doubt concerning the legislature's intent, the statute or ordinance is to be construed most strongly against the government, and in favor of the taxpayer. *Gould v. Gould,* 245 U.S. 151, 38 S.Ct. 53, 62 L.Ed. 211; *Colorado v. Est. of Fisch,* 153 Colo. 525, 387 P.2d 282; *Bedford v. Johnson,* 102 Colo. 203, 78 P.2d 373; *Golden State Bank v. Dolan,* 37 Colo. App. 29, 543 P.2d 1307. Further, courts should not interpret a statute or an ordinance to mean that which it does not express. *People ex rel. Marks v. District Court,* 161 Colo. 14, 420 P.2d 236. Section 4-1, which established a one percent tax, is completely incompatible with section 4-2, which establishes a sixty percent tax. In these circumstances, to accept the interpretation urged by the city would require that we vary the words of the ordinance. This we may not do. *Jones v. People,* 155 Colo. 148, 393 P.2d 366.

█ Even if we accept the city's construction, section 4 of Ordinance No. 200 is defective because it goes beyond the statutory authority set forth in section 29-2-109, C.R.S 1973,[2] under which it was enacted. Section 29-2-109(1), C.R.S. 1973, limits the imposition of a use tax to the privilege of storing, using, or consuming in the "levying city" construction and building materials purchased at retail. Section 4-2 of the ordinance does not peg the tax to the retail purchase price of materials actually stored, used, or consumed but rather pegs it to the *estimated total cost of the project.* Thus, the city disregards the retail purchase price standard and substitutes an estimate standard not contemplated by the legislature.

Further, the estimate procedure allows the city to levy a tax on unpurchased materials not yet stored, used, or consumed in the city. Section 29-2-109(1); C.R.S. 1973, limits the imposition of a use tax to materials actually stored, used or consumed; therefore, the city may not speculate as to what materials in the future will eventually be taxed.

█ Section 4 of the ordinance is not saved by section 4-3, which provides that an applicant can avoid the estimate procedure by submitting an affidavit that he intends to purchase *all* necessary materials from within the city. Those builders who necessarily must buy *some* materials outside the city, a category which may include most builders, do not have the

---

[2] Section 29-2-109, C.R.S. 1973, reads in pertinent part:
"(1) The use tax ordinance, resolution, or proposal of any town, city, or county adopted pursuant to this article shall be imposed only for the privilege of storing, using, or consuming in the town, city, or county any construction and building materials * * * *purchased at retail.*" (Emphasis added.)

benefit of section 4-3 and they are left subject to the invalid estimate procedure.

Alternatively, the city urges that section 4-1, establishing a use tax of one percent pegged to the retail purchase price of the construction and building materials, is valid and severable from section 4-2. Assuming severability, the city's collection procedure does not comply with the statutory procedures provided for in sections 39-26-201 through 211, C.R.S. 1973, of the Emergency Retail Sales Tax Act of 1935, which were adopted by reference in section 4-5 of the ordinance.

Section 4-5 directs the collection of the tax in substantially the same manner as the collection of state sales and use taxes, as provided for in the County and Municipal Sales Tax statute, 1967 Perm. Supp., C.R.S. 1963, 138-10-1, *et seq.*, now section 29-2-101, *et seq.*, C.R.S. 1973. Section 29-2-106(1), C.R.S. 1973, provides in pertinent part:
"* * * Unless otherwise provided in this article, the provisions of article 26 of title 39, C.R.S. 1973, shall govern the collection, administration, and enforcement of sales taxes authorized under this article."

Section 39-26-204(1)(a) requires that persons subject to the tax file monthly returns showing in detail the tangible personal property stored, used, or consumed by said person in the conduct of his business within the state in the preceding calendar month and on which property the sales or use tax has not been paid. The city's collection procedure does not require a tax return filing. Rather, a value for the proposed improvement is estimated, deductions are made for electrical, plumbing and mechanical costs, and the difference is then taxed.

Thus, although section 4-1 reads otherwise, the city does not even attempt to apply the use tax to building and construction materials already purchased for storage, use or consumption, nor to their retail price. This procedure completely disregards the requirements of section 39-26-204(1)(a). Because section 4-5 does not mandate a valid independent collection procedure, the ordinance must fail. It does not comply with section 29-2-106(3)(a), C.R.S. 1973, which requires that "any use tax imposed pursuant to section 29-2-109 shall be collected, administered, and enforced by the city, town, or county as provided by ordinance or resolution."

If, as here, an ordinance does not provide for a valid method of collection and administration of the use tax imposed, it is invalid. Thus, section 4-1 cannot stand alone, divorced from the realities of the invalid collection procedure.

## II.

The city contends that Ordinance No. 211, establishing the municipal services expansion fee, is a valid occupational excise tax on the business of developing and improving property, as authorized by section 31-15-501(1)(c), C.R.S. 1973 (1977 Supp.). The district court ruled that the ordinance established a property tax and, therefore, was void because

Broomfield, a statutory city at the time of the enactment of Ordinance No. 211, had no constitutional or statutory authority to adopt a property tax.

An analysis of the ordinance and prior case law supports the district court's conclusion that Ordinance No. 211 imposed a property tax the enactment of which was beyond the city's legislative competence.

Ordinance No. 211 is entitled: "An ordinance relating to revenue and regulation of new buildings and development and providing for the creation and collection of a municipal services expansion fee as a condition to the issuance of a building permit."

The labeling of the ordinance as one of "regulation" providing for collection of a "municipal services expansion fee" is of course not determinative of its true character. *Board of Trustees of the Town of Minturn v. Foster Lumber Company, Inc.*, 190 Colo. 479, 548 P.2d 1276; *Game and Fish Commission v. Feast,* 157 Colo. 303, 402 P.2d 169. "[T]he nature of a tax must be determined by its operation rather than by particular descriptive language that may have been applied to it." *Educational Films Corporation of America v. Ward,* 282 U.S. 379, 51 S.Ct. 170, 75 L.Ed. 400 (1931).

Our inquiry, therefore, must focus upon whether the ordinance regulates business or simply raises revenue by taxing property. In this regard, we are guided by the reasoning in *Walker v. Bedford,* 93 Colo. 400, 26 P.2d 1051;

"* * * The distinction between a property tax and an excise tax is not determined by the style of the enactments, but by the differences which exist, and when, as here, it is thought that the two nearly approach each other, they may usually be distinguished by the respective methods adopted of laying them and fixing their amount. * * * Thus, where the tax is imposed directly by the legislature without assessment, and is measured by the extent a privilege is exercised by the taxpayer without regard to the nature or value of his assets, it is an excise; but if the tax be computed upon a valuation of property and assessed by assessors, although a privilege may be included in the valuation, it is a property tax."

A reading of the pertinent section of the ordinance and its preamble discloses that we are confronted with a property tax. Section 3 establishes that the amount of the fee to be collected is $.927 per $100 of the valuation estimate indicated on the approved building permit application. The fee, therefore, is measured by a value of the applicant's assets. As revealed by the record, the valuation estimate is made by the building inspector in much the same manner as real property is assessed.

The third, fifth and seventh clauses of the preamble clearly recite the municipal concerns over the *time lag* between construction of new buildings and development and the *receipt of property tax revenues,* the estimated loss of revenue, and the means of recouping the *tax lag revenue loss.*

Section 3 and the preamble clauses are obvious in their import: the ordinance's purpose is to raise revenue by levying a property tax on new buildings at the start of construction rather than at their completion. The effect simply is to levy the property tax earlier in time. Consequently, we hold that the ordinance imposes an invalid property tax.

### III.

Finally, the city objects to the inclusion of those expansion fee payers paying under Ordinance No. 211 in the larger class of use tax payers paying under Ordinance No. 200. We find that the district court, in its discretion, properly held that the class included all those persons who had made application to the city for a building permit and in so doing had paid the levies charged under Ordinance No. 211 and under Ordinance No. 200.

We consider the city's other contentions of error to be without merit.

The judgment is affirmed.

MR. JUSTICE KELLEY does not participate.