**CHERRY HILLS FARMS, INC., a Colorado corporation, Carriage Homes Construction, Inc., on behalf of themselves and all others similarly situated, Plaintiffs-Appellees,**

v.

**CITY OF CHERRY HILLS VILLAGE, Colorado, Defendant-Appellant.**

No. 82SA165.

Supreme Court of Colorado, En Banc.

Oct. 11, 1983.

Seymour Joseph, Sheldon E. Friedman, Isaacson, Rosenbaum, Spiegelman & Friedman, P.C., Denver, for plaintiffs-appellees.

Robert L. Morris, Davis, Graham & Stubbs, Denver, for defendant-appellant.

Susan K. Griffiths, Denver, for amicus curiae, Colorado Municipal League.

NEIGHBORS, Justice.

The City of Cherry Hills Village appeals the orders entered by the district court that its ordinance providing for a service expansion fee is unconstitutional and certifying the case as a class action. We reverse the judgment that the ordinance is unconstitutional and affirm the ruling on the class action issue.

## I.

The City of Cherry Hills Village (City) is a home rule municipality of the State of Colorado, organized under article XX of the Colorado Constitution. The City adopted Council Bill No. 7, Series of 1979, on October 2, 1979. The ordinance has been codified as Title 3, Chapter 5, Sections 1–3 of the City Code of Cherry Hills Village.[1]

The purpose of the ordinance was to establish a Service Expansion Fee (SEF). In the preamble to the ordinance, the city council made the following legislative declarations: (1) The City is experiencing rapid growth and development. (2) To provide for the expansion of all City services, it is necessary to establish additional sources of revenue to fund these services. (3) A period of one to two years elapses between the time a building permit is issued and the City receives property tax revenues from the owner of the new or improved property.

The SEF is imposed on persons who obtain building permits from the City for new construction, additions to existing structures, and substantial alterations or reconstruction of existing buildings. Churches, schools, and governmental institutions are exempted from payment of the SEF. The SEF is calculated on the square footage and type of proposed improvement for which the building permit is sought. Under the terms of the ordinance, the applicant for the building permit is charged 15 cents per square foot for parking garages and recreational structures, such as swimming pools and tennis courts, and 40 cents per square foot for all other improvements.

The plaintiffs-appellees (property owners) own real property in the City. They brought this class action on behalf of themselves and some sixty-eight similarly situated parties, seeking a declaratory judgment that the ordinance is unconstitutional. The property owners filed a motion for summary judgment and a motion to determine the members of the class and to certify the case as a class action. Both motions were granted by the trial court which ruled as follows: (1) The ordinance imposes a general *ad valorem* property tax because the purpose of the ordinance is to provide for the expansion of all City services. (2) The tax imposed constitutes a special assessment which does not confer a benefit on the property taxed, thereby resulting in a taking of private property without compensation and without due process of law. (3) The ordinance imposes a tax which violates the uniformity requirement contained in article X, § 3 of the Colorado Constitution. (4) The cases which are dispositive of the tax issue are *Rancho Colorado, Inc. v. City of Broomfield,* 196 Colo. 444, 586 P.2d 659 (1978), and *Ochs v. Town of Hot Sulphur Springs,* 158 Colo. 456, 407 P.2d 677 (1965). (5) The requirements of C.R.C.P. 23(b) are met and the case is certified as a class action.

## II.

The parties accuse each other of raising issues on appeal which were not presented to the trial court. The property owners claim that the ordinance does not afford them "just and equalized valuations for assessments of taxes" in violation of article X, § 3 of the Colorado Constitution. The amicus curiae, Colorado Municipal League, which has aligned itself with the City, rais-

---

1. The text of the ordinance has been repro- duced as Appendix 1 to this opinion.

es the argument that the SEF imposed by the ordinance is an excise tax. We agree that neither issue was properly presented to the trial court. However, because the interpretation of a municipal ordinance involves questions of law rather than fact issues, we will address these contentions on their merits. *Veterans of Foreign Wars, Post 4264 v. City of Steamboat Springs,* 195 Colo. 44, 575 P.2d 835 (1975). "Considerations of judicial efficiency and economy also warrant this action." *Id.* at 49, 575 P.2d at 839.

### III.

The first question to be answered is whether the SEF is a tax. The City admits that the SEF is a tax, the sole purpose of which is to raise revenue to pay for the expansion of City services. There is no mention of any regulatory function in the ordinance. The SEF, regardless of its label, is a tax. *Rancho Colorado, Inc.,* 196 Colo. 444, 586 P.2d 659; *Walker v. Bedford,* 93 Colo. 400, 26 P.2d 1051 (1933); *Ard v. People,* 66 Colo. 480, 182 P. 892 (1919).

### IV.

We next determine whether the tax imposed by the SEF is an excise tax or an *ad valorem* property tax. The distinction is pivotal because if the tax is found to be a property tax, the uniformity clause of article X, § 3 of the Colorado Constitution is implicated. *Deluxe Theatres, Inc. v. City of Englewood,* 198 Colo. 85, 596 P.2d 771 (1979). If the tax is an excise tax, then the uniformity requirement is not applicable. *Id.*

The test to be used in determining whether the SEF adopted by the City is an excise or property tax is found in *Walker v. Bedford,* 93 Colo. 400, 26 P.2d 1051, where we stated:

"The distinction between a property tax and an excise tax is not determined by the style of the enactments, but by the differences which exist, and when, as here, it is thought that the two nearly approach each other, they may usually be distinguished by the respective methods adopted of laying them and fixing their amount. 26 R.C.L. 35. Thus, where the tax is imposed directly by the Legislature without assessment, and is measured by the extent a privilege is exercised by the taxpayer without regard to the nature or value of his assets, it is an excise; but, if the tax be computed upon a valuation of property and assessed by assessors, although a privilege may be included in the valuation, it is a property tax."

93 Colo. at 405, 26 P.2d at 1053. *See also Rancho Colorado, Inc.,* 196 Colo. at 449, 586 P.2d at 663. A recent pronouncement by the Supreme Court of Kansas succinctly summarizes the distinction between the two taxes.

"The term 'excise tax' has come to mean and include practically any tax which is not an *ad valorem* tax. An *ad valorem* tax is a tax imposed on the basis of the value of the article or thing taxed. An excise tax is a tax imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege."

*Callaway v. City of Overland Park,* 211 Kan. 646, 508 P.2d 902, 907 (1973).

Although an excise tax, like a property tax, is passed to raise revenue, it is distinguished from a property tax in that it is imposed upon the right to exercise a privilege and its payment is made a condition precedent to the exercise of the privilege involved. In *City of Huntington Beach v. Superior Court,* 78 Cal.App.3d 333, 144 Cal.Rptr. 236 (1978), the court held that a real property transfer fee was an excise tax which taxed only one of the incidents of property ownership. Here, the tax is imposed only on the expanded use of the property by the owner who seeks to improve it by new or additional construction. A tax on the privilege of using the property is not an *ad valorem* property tax. *Id.* We hold that the SEF is an excise tax because it is levied directly by the City on the use of property without assessment or regard to the value of the property. What is taxed is the privilege of improving the property by construction.

The reliance of the trial court and the property owners upon our decisions in *Rancho Colorado, Inc.,* 196 Colo. 444, 586 P.2d

659, and *Ochs,* 158 Colo. 456, 407 P.2d 677, is misplaced. In *Rancho Colorado,* Broomfield's municipal services expansion fee was measured by the building inspector's estimated value of the improvement described in the building permit application. We held that the fee imposed was "a property tax, the enactment of which was beyond the city's legislative competence." 196 Colo. at 449, 586 P.2d at 663. In this case, the tax has been imposed by the city council without assessment as a fixed fee per square foot for the privilege of improving the property. Therefore, *Rancho* is not controlling.

In *Ochs,* Hot Sulphur Springs adopted two ordinances imposing frontage taxes. One ordinance levied a tax of 10 cents per foot upon all properties within the city. Sixty percent of the tax revenue was allocated to the street department and forty percent to the equipment fund. The second ordinance imposed a tax of $2 for each fifty feet of lot space which fronted upon a water main. The revenue raised by this ordinance was used to maintain the town's water system. We first determined that the taxes could not be upheld as general *ad valorem* property taxes because they were not imposed uniformly upon both real and personal property according to their assessed valuations. We also held that the taxes imposed by the ordinances did not qualify as special assessment taxes because the revenue generated was used for general town purposes and did not specially enhance the properties taxed. Because Hot Sulphur Springs, as a statutory city, was limited to enacting only *ad valorem* or special assessment taxes, the taxes as levied in *Ochs* were invalid.

Since the City's SEF is an excise tax and not an *ad valorem* property tax, the uniform taxation provision in article X, § 3 of the Colorado Constitution is inapplicable. In addition, the SEF does not constitute a special assessment because no special benefit is conferred upon the improvements subject to the tax. *Ochs,* 158 Colo. 456, 407 P.2d 677.

**2.** The only questions appealed relate to the trial court's rulings on the summary judgment and class action issues. Whether our decision re-

## V.

The City contends that there was an insufficient basis for the court to certify the case as a class action. We disagree. The City answered interrogatories in which it provided the names of ninety-two persons who had paid the tax as of October 9, 1980. Some of those named had paid the tax in connection with more than one building permit. The constitutionality of the ordinance involves a question of law common to the entire class and applies to all members of the class. There is no requirement that a trial court conduct an evidentiary hearing prior to ruling on a request to determine the members of the class and certify the case as a class action. *Levine v. Empire Savings and Loan,* 197 Colo. 293, 592 P.2d 410 (1979). More importantly, the City has not identified any specific factual issues which indicate that class action treatment of this case is not warranted. Accordingly, the trial court properly exercised its discretion in its ruling on the class action issue. *Rancho Colorado, Inc.,* 196 Colo. 444, 586 P.2d 659, 663.

## VI.

The decision of the trial court that the ordinance is unconstitutional is reversed. The order certifying this case as a class action is affirmed. This case is remanded to the trial court for further proceedings in conformity with this ruling.[2]

*APPENDIX 1*

"COUNCIL BILL NO. 7
SERIES OF 1979

A BILL

FOR

AN ORDINANCE PROVIDING FOR THE CREATION AND COLLECTION OF A SERVICE EXPANSION FEE AS A CONDITION OF ISSUING BUILDING PERMITS

WHEREAS, the City of Cherry Hills Village, Colorado is experiencing a period of

solves all of the issues raised by the allegations in the property owners' complaint is a matter to be resolved by the parties and the trial court.

rapid growth and development and expects this situation to continue, and

WHEREAS, in order to provide for expansion of all services of the City, it is, in the judgment of the City Council, necessary and appropriate to provide additional sources of revenue for the funding of expanding services, and

WHEREAS, the period of one to two years elapses between the time that a building permit is issued and the City begins to receive property tax revenues.

NOW, THEREFORE, THE COUNCIL OF THE CITY OF CHERRY HILLS VILLAGE, COLORADO, ORDAINS:

Section 1. *Definitions.*

(a) Contractor. Any person, firm, partnership, joint venture, architect, or corporation, required to obtain a building permit pursuant to the Ordinances of the City of Cherry Hills Village, Colorado.

(b) Floor Area. The area of each floor and basement included within the surrounding exterior walls of a building or portion thereof, measured from the inside of all exterior walls, excluding parking garages.

(c) Building Inspector. The official charged with the administration and enforcement of the Uniform Building Code as adopted by the City of Cherry Hills Village, Colorado, or his regularly authorized deputy.

(d) Building. Any enclosed structure without reference to use or occupancy for which a building permit is required by the Ordinances of the City of Cherry Hills Village, Colorado.

Section 2. *Payment of Services Expansion Fee.*

(a) Any owner, architect, contractor or other person applying for a building permit in accordance with the applicable Ordinances of the City of Cherry Hills Village, Colorado shall, as a condition to obtaining such building permit, pay to the City of Cherry Hills Village, Colorado a services expansion fee.

1) For any building constructed in R–1, R–2, R–3, R–4, R–5, F–1, RA–1, C–1 and C–2, zoned districts as established and defined in the Zoning Ordinance for the City of Cherry Hills Village, Colorado, a services expansion fee of forty cents (40¢) per square foot of total floor area, as herein defined, as the same may be determined from the plans and specifications submitted to the building official as part of the application for a building permit.

2) For any enclosed parking garage and recreational structure such as tennis courts and swimming pools constructed in R–1, R–2, R–3, R–4, R–5, F–1, RA–1, C–1 and C–2 zoning districts as the same are created, established and defined in the Zoning Ordinance for the City of Cherry Hills Village, Colorado a services expansion fee of fifteen cents (15¢) per square foot of total area, as the same may be determined from the plans and specifications submitted to the building official as part of the application for a building permit.

(b) The service expansion fee shall apply to all new construction, all additions to existing structures and the substantial alterations or reconstruction of existing structures, except for churches, schools, governmental, municipal or quasi-municipal structures.

(c) Services expansion fee shall be due and payable at the time the building permit is issued. Under no circumstances shall the building official issue a certificate of occupancy until and unless the services expansion fee, as calculated in this section, has been paid in full.

Section 3. *Effective Date*

The Service Expansion Fee provided for herein shall be due and payable with respect to all building permit applications filed with the City from and after the 1st day of November, 1979.

Section 4. *Severability.*

If any part, section, subsection, ..." sentence of [sic] phrase of this Ordinance is for any reason held to be invalid, such decision shall not effect [sic] the validity of the remaining portions of this Ordinance; and the City Council for the City of Cherry Hills Village, Colorado hereby declares it would have

passed this Ordinance and each part, section, subsection, sentence, clause or phrases thereof, irrespective of the fact that any one or more parts, sections, subsections, sentences, clauses or phrases be declared invalid.

Adopted as Ordinance No. 7, Series of 1979, by the City Council of the City of Cherry Hills Village, Colorado and signed and approved by its Mayor and presiding officer this 2nd day of October, 1979."