**WINSLOW CONSTRUCTION COMPANY, a Colorado corporation, Plaintiff-Appellee,**

v.

**CITY AND COUNTY OF DENVER, Defendant–Appellant,**

and

**Executive Director of Revenue, State of Colorado, Defendant.**

No. 97SA79.

Supreme Court of Colorado, En Banc.

June 22, 1998.

Rehearing Denied Aug. 24, 1998.

Holley, Albertson & Polk, P.C., George Alan Holley, Eric E. Torgersen, Golden, for Plaintiff–Appellee.

Daniel E. Muse, City Attorney, City and County of Denver, Maria Kayser, Assistant City Attorney, Robert F. Strenski, Assistant City Attorney, Denver, for Defendant–Appellant.

Krassa, Madsen & Miller, LLC, Shayne M. Madsen, Boulder, for Amicus Curiae Colorado Retail Council.

Lentz, Evans and King, P.C. Robert A. Wherry, Jr. Denver, Colorado Attorneys for Amicus Curiae Colorado Contractors.

Association, Inc. and Colorado Association of Commerce and Industry Patrick C. Boyle Denver, Colorado Attorney for Amicus Curiae Colorado Association of Commerce and Industry.

Justice HOBBS delivered the Opinion of the Court.

This case arises from a dispute over a municipal tax which the City and County of Denver (Denver) levied on self-propelled construction equipment owned and used by Winslow Construction Company (Winslow) in the performance of construction work at Denver International Airport (DIA). The Arapahoe County District Court (district court) struck down the municipal tax as an unconstitutional ad valorem tax. Denver brought this appeal directly to us under section 13–4–102, 5 C.R.S. (1997).[1] Denver asserts that the district court lacked jurisdiction to hear the case, and, in the alternative, that the tax should be upheld as a valid excise tax on the privilege of using the equipment within the city.[2]

In addition, Denver urges this court to determine that section 29–2–109(2), 9 C.R.S. (1997), cannot be applied to curtail application of its use tax in light of its home rule authority. This section exempts from local taxation the use of personal property which occurs more than three years after its most recent sale, if the property was significantly used in the state within those three years.

We reverse the ruling of the district court. We hold that Denver's use tax is not an ad valorem tax. We also determine that section 29–2–109(2) cannot be applied to prevent Denver from collecting its use tax more than three years after purchase of the construction equipment.

## I.

Winslow is a Colorado corporation with its principal place of business in Englewood, Colorado. In 1993 Winslow performed con-

1. Section 13–4–102 provides that "the court of appeals shall have initial jurisdiction over appeals from final judgments of the district courts, ... except in: ... (b) Cases in which a statue, a municipal charter provision, or an ordinance has been declared unconstitutional."

2. Denver raises the following issues on appeal:
   1. Whether the District Court erred by denying Denver's motion to dismiss for lack of subject matter jurisdiction when the Executive Director of the Colorado Department of Revenue lacked jurisdiction and the trial court had no greater jurisdiction than the Executive Director.
   2. Whether the District Court erred by ruling that Denver's use tax is an unconstitutional ad valorem tax as applied to self-propelled construction equipment.
   3. Whether the District Court erred by denying Denver's motion for amendment of judgment requesting a determination that section 29–2–109(2), C.R.S., regarding sales and use tax does not apply to the Denver use tax article.

struction work at DIA, located in the city and county of Denver, utilizing self-propelled, motorized construction equipment that it owned. Winslow owned three pieces of this construction equipment for less than three years prior to its first use in Denver; the remainder it owned for more than three years.

In May of 1994, Denver audited Winslow for the period between January 1, 1993 and March 31, 1994. It then calculated the use tax due pursuant to the provisions of Denver Revised Municipal Code section 53–96 (D.R.M.C.53–96), which states:

> There is levied and there shall be collected and paid a tax in the amount stated in this article, by every person exercising the taxable privilege of storing, using, distributing or consuming in the city ... any article of tangible personal property, purchased at retail, for said exercise of said privilege, as follows:
>
> (1) On the purchase price paid or charged upon all sales and purchases of tangible personal property.

Under D.R.M.C. 53–92(c),[3] no tax is due if a sales or use tax that is equal to or greater than Denver's tax has already been paid on the property to another municipal corporation. If the property has previously been taxed at a lower rate, the difference must be paid to Denver upon its use within the city and county.

On August 22, 1994, Denver filed a Notice of Final Determination, Assessment and De-mand for Payment by Winslow for the use tax, plus penalties and interest, on those pieces of the equipment that Winslow owned for more than three years prior to first use in Denver. On September 21, 1994, Denver issued a second notice for equipment that Winslow owned for less than three years prior to their first use in Denver.

Winslow filed petitions for review with Denver's manager of revenue on September 9, 1994, and October 7, 1994, contesting the entire tax levy as an unconstitutional ad valorem property tax under article X, section 6 of the Colorado Constitution.[4] In the alternative, Winslow argued that section 29–2–109(2) prevents Denver from collecting the tax on construction equipment Winslow owned for more than three years prior to its use within the city and county.[5] Denver's manager of revenue held that D.R.M.C. 53–96 is not an ad valorem tax, relying primarily on the fact that the tax is based upon the purchase price, as opposed to the assessed value, of the property. The manager also concluded that the state's three year limitation set forth in section 29–2–109(2) cannot be applied to Denver, a home rule city, because the tax is a matter of local concern. Thus, the manager upheld the tax levy on all self-propelled construction equipment Winslow owned and used at DIA, regardless of the date of purchase.

Winslow appealed to the executive director of the Colorado Department of Revenue pur-

---

**3.** D.R.M.C. 53–92(c) states:

It is hereby declared to be the legislative intent of the city ... that the provisions of this article shall apply to any person who has already paid a retail sales tax or a use tax in respect to the sale of a service or tangible personal property taxable hereunder, to a municipal corporation organized and existing under the authority of the laws or the Constitution of any state in an amount less than the tax imposed by this article, ... but the tax imposed by this article shall, in such event, be measured by the difference between the amount imposed by this article and the amount previously imposed by the other municipality on said sale. If the retail sales tax imposed and paid to such municipal corporation aforesaid is equal to or more than the tax imposed by this article, no tax shall be due hereunder....

**4.** Article X, section 6 provides:

The general assembly shall enact laws classifying ... mobile and self-propelled construction equipment, prescribing methods of determining the taxable value of such property, and requiring payment of a graduated annual specific ownership tax thereon, which tax shall be in lieu of all ad valorem taxes upon such property....

**5.** Section 29–2–109(2) provides:

No use tax of any home rule city, town, or city and county shall be imposed with respect to the use or consumption of taxable tangible personal property within the home rule city, town, or city and county which occurs more than three years after the most recent sale of the property if, within the three years following such sale, the property has been significantly used within the state for the principal purpose for which it was purchased.

suant to section 29–2–106.1(3)(a), 9 C.R.S. (1997).[6] The executive director agreed with Denver's manager of revenue that the use tax is not an ad valorem tax, but held that section 29–2–109(2)'s three year limitation is a valid exercise of the General Assembly's authority over matters of statewide concern. Accordingly, the executive director prohibited Denver from collecting its tax on equipment Winslow owned for more than three years before its use at DIA.

Winslow then sought de novo review in the district court in Arapahoe County pursuant to section 29–2–106.1(7), 9 C.R.S. (1997),[7] challenging the executive director's determination that D.R.M.C. 53–96 is not an ad valorem tax. Invoking its home rule powers, Denver filed a counterclaim against Winslow challenging the applicability of section 29–2–109(2) to it, and a cross claim against the executive director alleging that she did not have jurisdiction over Winslow's appeal from the decision of Denver's manager of revenue. The executive director filed a notice of non-participation in the case and did not answer the cross claim. Winslow and Denver each moved for summary judgment based on a joint stipulation of facts filed with the district court.

The district court granted Winslow's motion for summary judgment, determining that D.R.M.C. 53–96 is a prohibited ad valorem tax. In light of this ruling, the district court did not determine whether the exemption of section 29–2–109(2) for personal property purchased more than three years prior to its use in the taxing jurisdiction applies to Denver. Following denial of post trial motions, including denial by failure to rule on

Denver's motion regarding the applicability of section 29–2–109(2) to it, Denver appealed directly to us under section 13–4–102.

Winslow and Denver have stipulated that if section 29–2–109(2) does not apply to Denver, Winslow owes $25,935.00, plus interest and penalty, on the equipment it owned for more than three years prior to its use at DIA. The parties have not stipulated to the amount Winslow owes on the equipment it owned for less than three years, and that issue will therefore require determination by the district court if we uphold D.R.M.C. 53–96.

## II.

We hold, pursuant to section 29–2–106.1, that the executive director and the district court where the taxpayer resided or had its principal place of business, *see* § 39–21–105(2)(a), 11 C.R.S. (1997), had jurisdiction over this tax appeal. We reverse the district court's ruling which invalidated Denver's use tax; it is not an ad valorem tax. In light of Denver's home rule status, the executive director erred in applying section 29–2–109(2) to exempt Winslow from paying Denver's use tax on equipment it owned for more than three years prior to its use in Denver.

## A.

### *Jurisdiction of the Executive Director and the District Court*

Denver contends that the executive director lacked jurisdiction to hear Winslow's appeal from the manager of revenue's decision, and that, as a consequence, the district

---

6. Section 29–2–106.1(3)(a) provides:
    If a taxpayer has exhausted his local remedies as provided in paragraph (c) of subsection (2) of this section [requiring a request for a hearing before the local government], the taxpayer may request the executive director of the department of revenue to conduct a hearing on such deficiency notice or claim for refund, and such request shall be made and such hearing shall be conducted in the same manner as set forth in section 39–21–103, C.R.S. . . . .
    Hearings before the executive director are de novo; the taxpayer bears the burden of proof as to factual matters. *See* § 29–2–106.1(3)(d), 9 C.R.S. (1997).

7. Section 29–2–106.1(7) provides:

Appeals from the final determination of the executive director may be taken in the same manner as provided in and shall be governed by section 39–21–105, C.R.S., by any party bound by the executive director's decision. Any such appeal shall be heard de novo . . ., except as follows: If the appellant is a local government, the taxpayer shall have the burden of proof as to all factual matters, and the appellant shall have the burden with respect to any legal determination of the executive director of the department of revenue which the appellant seeks to reverse; . . . and except that the executive director may, at his request, be a party to any such appeal.

court lacked jurisdiction. Denver therefore asserts that the only forum for judicial review of the manager's decision is the Denver District Court under C.R.C.P. 106. We disagree.

We first reject Denver's threshold argument that the executive director admitted lack of jurisdiction when she failed to answer the cross claim in district court. To the contrary, the executive director's decision not to participate in litigation in which she claims no interest does not constitute an admission that she lacked jurisdiction over the tax issues raised in this case. Winslow is the real party in interest regarding the tax, and has at no time admitted that the executive director lacked jurisdiction over its appeal. The executive director's decision not to respond to a cross claim cannot deprive a taxpayer of the exercise of its right of appeal under section 29–2–106.1. Jurisdiction is not conferred upon or taken away from a court based on the position of a party regarding the court's jurisdiction; instead, jurisdiction concerns the court's authority to decide the class of cases in which it renders judgment and is determined as a matter of law. *See Dallas Creek Water Co. v. Huey*, 933 P.2d 27, 38 (Colo.1997).

We therefore proceed to Denver's second jurisdictional argument, that section 29–2–106.1 impermissibly vests the executive director with municipal powers to hear appeals from local government sales and use tax determinations. In this regard, Denver relies on Colorado Constitution article V, section 35, which provides: "The general assembly shall not delegate to any special commission, private corporation or association, any power to make, supervise or interfere with any municipal improvement, money, property or effects, whether held in trust or otherwise, or to levy taxes or perform any municipal function whatever."

However, article V, section 35 prohibits only the delegation of "municipal function[s]." *See Voss v. Lundvall Bros., Inc.*, 830 P.2d 1061, 1069 (Colo.1992) ("The purpose of article V, section 35 of the Colorado Constitution is to prevent a legislative commission from intruding upon a city's right of self-government in matters of local concern."). We have

previously held that the appellate process governing locally imposed sales or use taxes is a matter of statewide concern. *See Walgreen Co. v. Charnes*, 819 P.2d 1039, 1047 (Colo.1991) (discussing the factors used for determining whether a matter is of local, state, or mixed local and state concern). The executive director is therefore not performing a "municipal function" in deciding an appeal from a decision by Denver's manager of revenue.

Accordingly, both the executive director and the district court had jurisdiction over Winslow's appeal from the manager of revenue's decision.

## B.

### Denver's Use Tax is Not an Ad Valorem Tax

Only the General Assembly can enact an ad valorem tax on self-propelled construction equipment. Article X, section 6 of the Colorado Constitution states that

> [t]he general assembly shall enact laws classifying ... mobile and self-propelled construction equipment, prescribing methods of determining the taxable value of such property, and requiring payment of a graduated annual specific ownership tax thereon, which tax shall be in lieu of all ad valorem taxes upon such property....

On the other hand, a municipal excise tax on such equipment is not a prohibited ad valorem tax. An excise tax differs from an ad valorem tax in that it is "imposed on the performance of an act, the engaging in an occupation or the enjoyment of a privilege," whereas an ad valorem tax is "imposed on the basis of the value of the article or thing taxed." *Cherry Hills Farms, Inc. v. City of Cherry Hills Village*, 670 P.2d 779, 782 (Colo. 1983) (quoting *Callaway v. City of Overland Park*, 211 Kan. 646, 508 P.2d 902, 907 (1973)).

In determining whether Denver's use tax is an excise or ad valorem tax, we look to the purpose, wording, and effect of the tax in light of its language and analogous taxes. For example, the state imposes an excise tax on "the privilege of storing, using, or consuming in this state any articles of tangible

personal property purchased at retail." § 39–26–202(1), 11 C.R.S. (1997). Such a tax operates to prevent companies from purchasing retail products out of state and then transporting them here in order to avoid paying a sales tax in Colorado. *See Walgreen,* 819 P.2d at 1043. Similar to the state excise tax, Denver imposes D.R.M.C. 53–96 on "the taxable privilege of storing, using, distributing or consuming in the city ... any article of tangible personal property."

■ Nevertheless, we recognize that the taxing entity's denomination of a tax as an excise tax is not determinative. *See Rancho Colorado, Inc. v. City of Broomfield,* 196 Colo. 444, 449, 586 P.2d 659, 663 (1978). We also take into account other indicia, including the method prescribed for assessing the tax. *See Walker v. Bedford,* 93 Colo. 400, 405, 26 P.2d 1051, 1053 (1933). In *Walker* we said that

> [t]he distinction between a property tax and an excise tax is not determined by the style of the enactments, but by the differences which exist, and when, as here, it is thought that the two nearly approach each other, they may usually be distinguished by the respective methods adopted of laying them and fixing their amount. Thus, *where the tax is* imposed directly by the Legislature without assessment, and is *measured by the extent a privilege is exercised by the taxpayer without regard to the nature or value of his assets, it is an excise;* but, *if the tax be computed upon a valuation of property and assessed by assessors,* although a privilege may be included in the valuation, *it is a property tax.*

*Id.* (emphasis added; citations omitted).

■ Denver's use tax is levied on a use privilege and is not invariably computed on the "valuation of property and assessed by assessors." Rather, Denver's tax auditor computes the amount owed based on the item's retail purchase price.[8] Under D.R.M.C. 53–95(17), "purchase price" is defined to mean "the aggregate value measured in currency paid or delivered or promised to be paid or delivered in consummation of a

sale," except that when the property is "first distributed, stored, used or consumed in the city more than one (1) year after its retail sale," purchase price means the "market value in the city and its environs." The ordinance therefore taxes equipment less than one year old at its purchase price, and equipment over one year old at its market value. Denver's use of market value in this context is intended to benefit the taxpayer, and reflects a recognition of the inequity inherent in taxing at its original purchase price equipment that has devalued with age.

We reject Winslow's contention that using value for computing a tax automatically means that the tax is ad valorem. We have previously recognized that the use of value in tax determinations is not conclusive evidence that the tax is ad valorem. For example, although the state's inheritance tax is based upon the value of the property acquired by a devisee, it is not an ad valorem tax. *See In re House Bill No. 122,* 23 Colo. 492, 493, 48 P. 535, 535 (1897)("Although designated as a tax, [the inheritance tax] is not such a tax upon property as is contemplated by section 3 of article 10 of the state constitution."). Another example is the sales tax, which is based upon the purchase price of a retail item. Purchase price generally reflects an item's value at the time of its sale. If a calculation based on value always classifies a tax as ad valorem, sales taxes could arguably be prohibited by article XX, section 6.

In addition to the method of calculating a tax, we also take into consideration how often the tax is imposed on the property. In contrast to excise taxes, ad valorem taxes are usually imposed at recurring intervals on the same piece of property. *See* Black's Law Dictionary 1218 (6th ed.1990) (defining property tax as "[a]n ad valorem tax, usually levied by a city or county government, on the value of real or personal property that the taxpayer owns *on a specified date* " (emphasis added)). The real property tax is a classic example; ownership of the property triggers a yearly tax based upon the property's assessed valuation. In contrast, D.R.M.C.

---

8. In this regard, Denver's use tax again parallels the state excise tax, *see* § 39–26–202(1), which is computed on the purchase price of the item. *See* § 39–26–102(7), 11 C.R.S. (1997).

53–96 constitutes a one time fee imposed at the time the privilege of utilizing self-propelled construction equipment within the city and county is exercised.[9]

In sum, D.R.M.C. 53–96 taxes a use or privilege and is an excise tax. We conclude that Winslow has not met its burden of proving that Denver's tax is unconstitutional. *See City of Leadville v. Rood*, 198 Colo. 328, 329, 600 P.2d 62, 63 (1979)("A municipal ordinance is presumed to be constitutional, and the assailant thereof has the burden of proving it unconstitutional beyond a reasonable doubt."). Although Denver could have chosen other methods for calculating the tax owed on self-propelled construction equipment used within its boundaries,[10] its choice of purchase price, adjusted to reflect the value of aging equipment, is not unreasonable.

### C.

#### *Applicability of Section 29–2–109(2)*

Section 29–2–109(2) is in conflict with D.R.M.C. 53–96. The state statute prohibits the imposition of local use taxes on tangible personal property purchased more than three years prior to its use within the taxing entity and significantly used in the state within those three years. By contrast, D.R.M.C. 53–96 contains no time limits for the application of Denver's use tax. Denver contends that because it is a home rule city and D.R.M.C. 53–96 deals with a matter of local concern, the conflicting state statute is inapplicable to Denver's use tax.[11] We agree.

As a home rule city, Denver has the power of taxation set forth in the Colorado Constitution. Article XX, section 6 of the Colorado Constitution provides that any city or town in Colorado with two thousand or more inhabitants may create its own charter, "which shall be its organic law and extend to all its local and municipal matters." Upon filing its charter with the secretary of state, the city and its citizens have "all ... powers necessary, requisite or proper for the government and administration of its local and municipal matters." *Id.* These powers include "[t]he assessment of property in such city or town for municipal taxation and the levy and collection of taxes thereon for municipal purposes and special assessments for local improvements...." Colo. Const. art. XX, § 6(g).

Here, Denver's use tax is intended to prevent individuals and businesses from purchasing property in another jurisdiction in order to avoid paying a sales tax in Denver. *See Walgreen*, 819 P.2d at 1043. In light of that purpose, the tax is applicable only to the extent that no tax has been paid to another municipality, or to make up the difference between Denver's tax and a lower tax charged by other local taxing jurisdictions. *See* D.R.M.C. 53–92(c). Denver's tax therefore complies with the proposition that "[g]iven the supplementary nature and equalizing function of the use tax, the burden on the taxpayer should be no greater than necessary to compensate for the sales tax originally avoided on the purchases." *International Bus. Mach. Corp. v. Charnes*, 198 Colo. 374, 377, 601 P.2d 622, 624 (1979).

9. Winslow correctly points out that the local taxes declared to be ad valorem in *Rancho Colorado, Inc. v. City of Broomfield*, 196 Colo. 444, 586 P.2d 659 (1978) and *Cherry Hills Farms, Inc. v. City of Cherry Hills*, 670 P.2d 779 (Colo.1983), were imposed only once upon the issuance of a building permit. In both cases, however, the tax at issue was clearly designed to address the "[t]ime lag between construction of new buildings and development and the [r]eceipt of property tax revenues...." *Rancho Colorado*, 196 Colo. at 449, 586 P.2d at 663. Because these taxes are designed as an advance on anticipated property taxes, they are appropriately labeled ad valorem taxes when based upon the market value of the property improvements.

10. For example, Winslow suggests that Denver could have taxed the construction equipment based upon the contract price of Winslow's work at DIA, the number of cubic yards of earth moved during the work, or the fair rental value of Winslow's equipment.

11. Although the district court did not rule on this issue, we have decided to resolve it without further delay; the parties have briefed the issue and the facts were established by stipulation in the lower court. *See M.D.C./Wood, Inc. v. Mortimer*, 866 P.2d 1380, 1382 (Colo.1994) ("It is only when facts are presented to the trial court by stipulation, or uncontested documentary evidence, that an appellate court may draw its own conclusions.").

In *City & County of Denver v. State,* 788 P.2d 764 (Colo.1990), we set out the framework for analyzing a conflict between a state statute and a municipal ordinance. We first recognized "three broad categories of regulatory matters: (1) matters of local concern; (2) matters of statewide concern; and (3) matters of mixed state and local concern." *Id.* at 767. We then described different approaches to regulation within these categories:

> In matters of local concern, both home rule cities and the state may legislate. However, when a home rule ordinance or charter provision and a state statute conflict with respect to a local matter, the home rule provision supersedes the conflicting state provision. In matters of statewide concern, the General Assembly may adopt legislation and home rule municipalities are without power to act unless authorized by the constitution or by state statute. Finally, ... in matters of mixed local and state concern, a charter or ordinance provision of a home rule municipality may coexist with a state statute as long as there is no conflict, but in the event of conflict the state statute supersedes the conflicting provision of the charter or ordinance.

*Id.* (citations omitted).

We cautioned, however, that these categories are not "mutually exclusive or factually perfect descriptions," and that no particular resolves in every case, which category applies. *Id.* Rather, "we have made these determinations on an ad hoc basis, taking into consideration the facts of each case." *Id.* at 767–68. We have emphasized four factors in making this determination:

> whether there is a need for statewide uniformity of regulation; whether the municipal regulation has an extraterritorial impact; whether the subject matter is one traditionally governed by state or local government; and whether the Colorado Constitution specifically commits the particular matter to state or local regulation.

*Voss,* 830 P.2d at 1067.

In arguing that D.R.M.C. 53–96 deals with a matter of local concern, Denver relies primarily on *Berman v. City & County of Den-*ver, 156 Colo. 538, 400 P.2d 434 (1965) and *Security Life & Accident Co. v. Temple,* 177 Colo. 14, 492 P.2d 63 (1972). *Berman* involved a taxpayer's challenge to the authority of home rule cities to adopt sales and use taxes. In upholding Denver's authority in this regard, we stated that "[t]he right to levy a tax to raise revenue with which to conduct the affairs and business of the City is clearly within the constitutional grant of power to home rule cities, contained in Article XX, Sec. 6 of the Constitution of Colorado." 156 Colo. at 542, 400 P.2d at 436–37. We then articulated that "[t]he provisions of the sales and use tax ordinances adopted by [Denver] relate to matters of 'local or municipal' concern within the meaning of Article XX, Sec. 6." 156 Colo. at 543, 400 P.2d at 437.

In *Security Life,* we specifically addressed a conflict between a state statute and a municipal sales and use tax ordinance. The state statute at issue established a gross premiums tax on insurance companies, and purported to limit the authority of local governments to impose additional taxes on such companies. *Security Life,* 177 Colo. at 15, 492 P.2d at 63–64. Relying on this statute, Security Life sought a refund of taxes it had paid to Denver on purchases and use of tangible personal property within the city limits. Security Life argued that regulation of insurance companies was a matter of state concern, and that the state statute therefore superseded Denver's tax ordinance. *Id.* at 16, 492 P.2d at 64. We disagreed, stating:

> The activity of the entity taxed is not controlling when testing whether Denver is acting in a purely local and municipal matter. The point is that the power to levy sales and use taxes for the support of the local home rule government is "essential ... to the full exercise" of the right of self-government granted to such cities under Article XX, section 6. That the power to levy and collect within Denver excise taxes such as the sales tax is purely " 'local and municipal' concern" was delineated clearly in *Berman.* The state, even when acting under its regulatory powers, cannot prohibit home rule cities from exercising a

power essential to their existence (local taxation).

*Id.*

Winslow suggests that *Berman* and *Security Life* should be revisited in light of the multi-factored approach to determining whether a matter is of local concern that we later adopted in *Denver* and *Voss.* However, an examination of the factors set forth in *Voss* supports our determination that the imposition of Denver's use tax is a matter of local concern.

■ We first consider the need for statewide uniformity in this arena. Although the legislative declaration to article 2 of title 29 states that the imposition of local sales and use taxes "affects the flow of commerce within this state and the welfare of the people of this state," and that the legislature's purpose in enacting the article was to "provide a higher degree of uniformity in any sales taxes imposed by such entities," § 29-2-101, 9 C.R.S. (1997), we are not bound by a legislative declaration that a matter is of statewide concern. *See People ex rel. Stokes v. Newton,* 106 Colo. 61, 66, 101 P.2d 21, 23 (1940). Denver is attempting to collect only the difference between what it would have collected in sales tax had the equipment been purchased in Denver and any sales or use tax previously paid to another municipality. In these circumstances, the state's interest in uniformity does not outweigh Denver's interest in preventing tax avoidance by purchasing outside of the city limits.

■ We next consider the extraterritorial impact of Denver's use tax. A 1985 Colorado Legislative Council report to the General Assembly emphasizes that local sales and use taxes impact businesses which are operating throughout the state and which must comply with a wide variety of differing taxing procedures. *See* Committees on Business Issues, Sunset Reviews, Colorado Legislative Council, Report to the Colorado General Assembly, Res. Pub. No. 290 (1984). Under the Denver ordinance, however, payment of sales or use taxes to another municipal jurisdiction will lower, or possibly even eliminate, the necessity of paying Denver's use tax. In addition, we note that article 2 still serves the purpose of standardizing taxation among local governments that do not have home rule status.

■ Finally, considering the last two factors of our four factor analysis, we determine that they weigh heavily in favor of a conclusion that D.R.M.C. 53-96 involves a matter of local concern. The Colorado Constitution specifically commits the imposition of municipal taxes to home rule cities, *see* Colo. Const. art. XX, § 6, and local taxation is a matter which has traditionally resided in local government.

Winslow suggests that *Security Life* has been implicitly overruled by our more recent decision in *Walgreen,* 819 P.2d at 1039, which held that the process for challenging municipal tax assessments is a matter of statewide concern. We disagree. *Walgreen* established the validity of a statewide sales and use tax *appeals process* that conflicted with Denver's municipal ordinance. In that case, we did not there hold that a local sales and use tax is a matter of statewide concern. In affirming the constitutionality of the state's uniform appeals process, we stated that allowing

> each local statutory or home rule government to specify its own appeal procedures for locally imposed use or sales taxes ... would result in multiple appellate procedures from which district courts would be forced to choose when presiding over appeals taken from fundamentally similar tax assessments. This result directly contravenes the requirements of article VI, section 19, [requiring uniform operation of state courts] and is therefore impermissible.

*Id.* at 1046-47. We relied heavily on the constitutional mandate of uniform access to state courts, *id.,* a consideration which we uphold in this case by recognizing the executive director's jurisdiction over an appeal from Denver's tax decision, but which is not at issue when considering a home rule city's authority to impose taxes on property used within its limits.

*Berman* and *Security Life* stand for the proposition that the imposition of local sales and use taxes is a matter of local concern; we will not overrule them. Although we

recognize that the General Assembly has an interest in promoting the free flow of commerce between jurisdictions within Colorado and preventing multiple taxation by local governments, Denver has properly employed its home rule power in levying and collecting its use tax on the privilege of using self-propelled construction equipment within the city and county.

### III.

Accordingly, we determine that the executive director and the district court properly exercised jurisdiction over this case. We reverse the district court's holding that D.R.M.C. 53–96 is an unconstitutional ad valorem tax. We hold that section 29–2–109(2) cannot be applied to limit Denver's home rule authority over the imposition of its use tax. We remand the case to the district court for determination of the total amount of tax, plus interest and penalties, that Winslow owes to Denver.