No. 21878.

EDWIN C. OCHS, ET AL. v.
TOWN OF HOT SULPHUR SPRINGS, ET AL.
(407 P.2d 677)

Decided November 15, 1965.

ROBINSON and CURRAN, for plaintiffs in error.

HENRY J. R. BENAC, for defendants in error.

*En Banc.*

MR. JUSTICE MOORE delivered the opinion of the Court.

THE parties appear in this court in the same order as they appeared before the trial court and will be referred to as they appeared in the lower court.

The plaintiffs asked for entry of a declaratory judg-

ment that certain "frontage" taxes claimed by the Town of Hot Sulphur Springs were illegal and void and beyond the power of the town to exact. The trial court held that the taxes claimed by the town were valid, and the plaintiffs are here on writ of error to review that judgment. Although a formal appearance was entered by the defendants we were not favored by any brief attempting to support the judgment.

The undisputed facts are as follows: The plaintiffs, Edwin C. Ochs and Betty M. Ochs, were owners of about 184 parcels of land situated entirely within the corporate limits of the town of Hot Sulphur Springs. None of the plaintiffs' lots lie within any special improvement district of the town. The total assessed value of the lots for the year 1962 was $2,830. The property taxes assessed against the property on an ad valorem basis were: A general levy of 18.97 mills or a tax of $53.69, a school district levy of 26.52 mills or a tax of $75.05, a Moffat Tunnel levy of .40 mills or a tax of $1.13, and a town levy of 20.00 mills or a tax of $56.60 — all being a total levy of 65.89 mills upon the assessed valuation with a resultant total tax of $186.47. Also it is undisputed that in addition to the town's 20 mill levy, it asserted a "frontage tax" and a "water frontage tax" against the plaintiffs' lots. The legality of these "frontage" taxes is the foundation of the instant suit.

The "frontage tax," Town Ordinance No. 142, asserted a tax of ten cents per front foot upon properties within the town's corporate limits, and the revenues therefrom were allocated 60 per cent to the street department fund and 40 per cent to the equipment fund. The "water frontage tax," Town Ordinance No. 63, purported to levy a tax of $2 per each 50 feet of lot space fronting upon a water main, and was for the maintenance of the town's water system. Application of these "frontage" assessments to plaintiffs' platted property amounted to an additional tax of $655 or in excess of 23% of the total assessed valuation of the land.

It is argued as grounds for reversal of the judgment:

"1. If the 'taxes' were special assessments upon the properties of the plaintiffs the revenues therefrom could not be diverted to providing for general town purposes, but would necessarily have to be used and confined to payment for the capital improvement resulting in an equivalent benefit to the plaintiffs' properties.

"II. The revenues derived from the taxes are designated for general purposes of the Town, *i.e.*, in maintenance of the Town's water system, roads and road equipment, and the manner of imposition of taxes upon properties by a municipality is governed by Section 3, Article X of the Colorado Constitution, prescribing that the same shall be uniform ad valorem taxes.

"III. Where the taxes result in a flagrant inequality between the burden imposed and the benefit received, such is confiscatory and unconstitutional."

██ If the ordinances under attack are to be given validity they must be justified within one of two types of taxes permitted under statutory or constitutional authority, namely: (1) a general ad valorem tax as prescribed by Article X, Section 3 of the Colorado Constitution, which must be imposed uniformly upon both real and personal property according to their assessed valuation, *Gordon v. Wheatridge Water District, et al.,* 107 Colo. 128, 109 P.2d 899, 84 C.J.S. Taxation § 26; or (2) an assessment in the nature of a special tax for purposes of municipal improvement conferring a special benefit upon the property being assessed, 63 C.J.S. Municipal Corporations §§ 1290, 1291.

The source by which the municipality may impose either of these two types of taxes upon the properties within its corporate limits is found under the provisions of Article X, Section 7, of the Colorado Constitution. In turn, this power is specifically amplified or implemented by the provisions of C.R.S. '53, 139-32-1(5) which provides:

"POWERS OF GOVERNING BODIES. — The govern-

ing bodies in cities and towns shall have the following powers: * * *

"(5) TAXES. — To levy and collect taxes for general and special purposes on real and personal property."

And the specific taxing power is governed by C.R.S. '53, 139-37-1:

"POWER TO LEVY TAXES — ON WHAT PROP- ERTY. The city council or board of trustees of any city or town shall have power and authority to levy taxes, the same kinds and classes, upon taxable property, real, personal and mixed, within the limits of the city or town, as are subject to taxation for state or county pur- poses, in accordance with the laws of this state."

But what we must concern ourselves with is the dis- tinction between an "assessment" and an ad valorem tax. This distinction was pointed out in *City and County of Denver v. Tihen,* 77 Colo. 212, 235 Pac. 777, from which we quote the following:

"* * * Taxation and assessment are not synonymous terms. Each is a separate and distinct exercise of the sovereign power to tax but, as indicated above, taxation, as the word is employed in our Constitution and statutes generally, is that burden or charge upon all property laid for raising revenue for general public purposes in defraying the expense of government. Assessments are local and resorted to for making local improvements on the theory that the property affected is increased in value at least to the amount of the levy. * * *"

If the "taxes" were special assessments upon the prop- erties of the plaintiffs, the revenues therefrom could not be diverted to providing for general town purposes, but would necessarily have to be used and confined to payment for the capital improvement resulting in an equivalent benefit to plaintiffs' properties. It is appar- ent that the ordinances in question do not purport to be a special "assessment" within the definition thereof as contained in *City and County of Denver v. Tihen, supra.*

The trial court reached the conclusion that the

"frontage" taxes imposed by the ordinances were authorized by C.R.S. '53, 139-32-1(5) which provides that the governing body in cities and towns shall have power:

"To levy and collect taxes for general and special purposes on real and personal property."

In reaching this conclusion the trial court erred. It is sufficient to say that if the tax is for a "general" purpose it must be an ad valorem tax. If it is a tax for a "special" purpose it must meet the tests laid down in *Pomroy et al. v. Board of Public Water Works of Pueblo, et al.,* 55 Colo. 476, 136 Pac. 78:

"* * * Authority to levy a special frontage tax can only be upheld on the theory that the property upon which it is levied is specially benefitted by the purposes to which such tax may be applied.

\* \* \*

"* * * So much of an improvement as is designated and utilized for the general benefit of the inhabitants and property within the limits of a municipality is in no sense local; and special assessments to raise funds to construct, purchase, pay for, or maintain that portion of it, cannot be lawfully levied. * * *"

\* \* \*

■■ "Special benefits which will sustain a special assessment must be immediate, and of such a character that they can be seen and traced. Remote or contingent benefits enjoyed by the general public will not sustain a special assessment. * * *

"To enforce a special assessment for a purpose which does not confer a special benefit upon the property upon which it is levied would result in taking private property without compensation, and without due process of law."

To like effect is *City and County of Denver v. Greenspoon,* 140 Colo. 402, 344 P.2d 679, where we find this statement:

"To enforce a special assessment for a purpose which does not confer a special benefit upon the property on

which it is levied would result in taking property without compensation, in violation of due process of law."

Upon the trial the evidence was clear that there was nothing by the imposition of the taxes which specially enhanced the value of the plaintiffs' properties, and this being so, it is patent that the taxes were nothing more than a devise or a scheme, unsupported by any permissive revenue producing authority, to provide funds for the general community benefit, and hence violative of the due process of law guarantees of the federal and state constitutions.

The judgment is reversed and the cause remanded with directions to enter judgment as prayed for in the complaint.