Warren F. REAMS, Plaintiff-Appellant,

v.

The CITY OF GRAND JUNCTION, a body politic and corporate, and the City Council of the City of Grand Junction, and Louis Brach, Frank Dunn, Dale Hollingsworth, Karl M. Johnson, William G. O'Dwyer, Robert Holmes, Jane Quimby, as members of the City Council of the City of Grand Junction, Defendants-Appellees.

No. 82SA288.

Supreme Court of Colorado, En Banc.

Feb. 27, 1984.

Feder, Morris & Tamblyn, P.C., Harold A. Feder, Stephen B. Schuyler, Denver, for plaintiff-appellant.

Gerald J. Ashby, City Atty., Grand Junction, for defendants-appellees.

KIRSHBAUM, Justice.

Plaintiff, Warren F. Reams, appeals a judgment of the Mesa County District Court upholding the validity of a Grand Junction municipal ordinance assessing plaintiff's property for costs of a special improvement district.[1] We affirm.

### I.

On April 2, 1980, the Grand Junction City Council (council) adopted a resolution declaring its intention to create Local Improvement District No. ST–80, Phase A (the district) for the purpose of constructing an elevated arterial roadway and appurtenant sidewalks, curbs and gutters. The council also adopted a resolution approving plans and specifications for the contemplated improvements and authorizing publication of notice of intent to create the district.

On May 7, 1980, the council conducted hearings on the proposed district. Plaintiff filed "Objections and Exceptions" requesting exclusion of his property from any assessment of costs for the proposed district.[2] Plaintiff also presented testimony by an appraiser, Richard Hodges, to the effect that the proposed improvements would result in a twenty-four percent decrease in the value of the Reams property and would not benefit such property. The hearing was continued until May 14, 1980, on which date further evidence was presented. The council then adopted a resolution authorizing creation of the district which, as defined, included plaintiff's property.

Pursuant to C.R.C.P. 106, plaintiff sought judicial relief to exclude his property from the operation of the proposed ordinance. Recognizing that no assessment had been made against plaintiff's property, the parties agreed to a stay of the district court action until such assessment occurred.

Subsequently, a hearing to determine appropriate assessments for the project was conducted.[3] At that hearing, the city's appraiser testified that in his opinion plain-

---

1. This appeal has been referred to this court by the Court of Appeals pursuant to § 13–4–110(1)(a), C.R.S.1973.

2. The following pertinent statements were contained in plaintiff's "Objections and Exceptions":

 "2. The proposed improvements of ST80 will provide neither special nor general benefits to the described property of Warren F. Reams, the only benefit inuring to the citizenry of Grand Junction in general.

 "3. The proposed improvements will seriously injure the property of Warren F. Reams and his rights of access and view ....

 "4. The proposed improvement will substantially impair the value of said property....

 "5. Pursuant to the Constitution of the United States and Article II, Section 25 of the Constitution of the State of Colorado and the laws of the State of Colorado, the inclusion of said property within District ST80, Phase A, where no special benefit inures to the property, is a violation of due process of law and the constitutional rights of Warren F. Reams and any assessment under these circumstances would constitute a taking of his property without just compensation."

3. A transcript entitled "Proceedings of the City Council of the City of Grand Junction, Colorado re: Special Street Improvement No. I.D. ST–80, Phase A April 2, 1980—May 14, 1980" was originally submitted as part of the record on appeal. Plaintiff later filed a "supplemental transcript" which also reflects proceedings which were conducted before the council at some time. This supplemental transcript is not notarized or otherwise authenticated and does not indicate when the proceedings recorded therein oc-

tiff's property had been benefited by the roadway to the extent of the proposed assessment against such property.[4] When asked to explain the basis of his opinion, he stated in part as follows:

"Well, in view of the present zoning, most logically the property would be for ~ multi-family bulk development plans, as the property across the street has been. And ... you would have to go before the Planning Board for approval of the plan. Again, major arteries are becoming more and more important, and developers are being required to provide this sort of access and even to pay for widening streets that are already in place along land that [is] subdivided. [T]his street opens up the property to a much greater extent than it was before, and, in my opinion, ... the buyer of that property now knowing its potential and wanting it for development, would pay at least the amount of the improvements above what it was worth before."

On cross-examination, when asked to state what "dollar calculations" he made in determining the value of the property, the city's appraiser stated, "I didn't put it in dollars. I put it in common sense."

Plaintiff's appraiser also testified at this hearing. He stated that there were "no special benefits" to plaintiff's property from the roadway construction, and further opined that, based upon a comparable sales analysis, plaintiff's property would sustain a loss equivalent to "approximately $32,-892."

On April 1, 1981, the council adopted an ordinance approving the assessable costs of the district. Plaintiff's property was included. With respect to plaintiff's property, the ordinance contained the following pertinent language:

"The roadway does for the Reams properties only what would be required of him or another developer to permit adequate development of the property and at a reduced cost over what would have been paid by the developer. The benefit to the land exceeds the amount of the assessment made against the land. The proof of the pudding being in the eating, one need only consider the developer of an almost identical tract to the Reams tract on the east side of the roadway from Reams who obviously felt sufficient benefit of this roadway to donate right-of-way for it and accept an assessment for its construction, which assessment exceeds the Reams assessment by about $25,000.00."

This ordinance also contained the following provision:

"Section 7. That monies remaining in the hands of the City Finance Director as the result of the operation and payments under Improvement District No. ST–80, Phase A, after the retirement of all bonds and proper payment of monies owing by the District shall be retained by the Finance Director and shall be used thereafter for the purpose of further funding of past or subsequent improvement districts which may be or may become in default or for such purposes as the City Council of the City of Grand Junction may from time to time direct."

On April 30, 1981, plaintiff filed an amended complaint in the pending district court action, requesting that the ordinance assessing his property be set aside, and seeking a declaration pursuant to C.R.C.P. 57 that such ordinance was unconstitutional. On May 9, 1981, a notice of assessment was mailed to plaintiff stating that his property had been assessed in the principal

---

curred; however, its authenticity is not contested, and the parties rely upon its contents in their briefs on appeal. It appears from the record as a whole that, contrary to comments in plaintiff's opening brief, the proceedings recorded in the supplemental transcript occurred well after May 14, 1980; were completed prior to the

filing of plaintiff's amended complaint; and probably took place on March 16, 1981.

4. The road apparently was constructed sometime between May 7, 1980, and March 16, 1981.

amount of $48,524.87 for the project. The notice stated that "[i]f you elect to pay by installments ... [a] one time 6 percent cost of collection and incidentals is added to the principal. Interest for the 10 year period is simple interest declining balance method at the rate of 10.4470."

The trial of plaintiff's civil action commenced June 17, 1981. During the trial, the attorney for the council acknowledged a "flaw" in section 7 of the assessment ordinance, stating that "I think that when there is added 'or for such other purpose as the City Council of the City of Grand Junction may from time to time direct,' I think that is wrong...." The council asserted that this limited portion of the ordinance could be severed, leaving the remaining portion of section 7 and all other provisions of the ordinance intact.

On November 23, 1981, the trial court entered judgment finding that plaintiff's property was benefited by the improvements and denying plaintiff's request for relief. With regard to section 7 of the April 1, 1981, ordinance, the trial court entered the following pertinent conclusions:

"Section 7 is a catchall proviso to the effect that once all the special improvement district bonds and other moneys owed by the district have been paid, any moneys remaining in the hands of the Defendant's finance director shall be used for funding other improvement districts or for other general city purposes.... Defense counsel has verbally acknowledged that that is an unconstitutional proviso. The legal question [then] becomes whether the unconstitutional taint of that section permeates the whole of the ordinance and thus the assessment against the Plaintiff.... [A]t the end of the period of collection of the assessment and the payment of the bonds, the funds in the hands of the finance director should wash. However, amortization accounting is not that precise and nominal sums are sometimes left over. Section 7 provides for their distribution in an un-

constitutional way. The Court concludes that because of the size of the sum involved that the taint is inconsequential.

"To correct even that unsubstantial problem, the Court can also use constitutional·construction to sever the portion of Section 7 which is tainted. Plaintiff asserts that the taint is so pervasive as to taint the whole ordinance. The Court concludes that all that part of Section 7 after the word 'of' in line 6 can be severed by deletion, or by substituting therefor 'proportionally distributing the funds to the assessed property owners'....

"In this case the provision is for a very insignificant catchall cleanup purpose and has no effect of serving as a general revenue raising proviso. The Court concludes that the proviso is severable and may be deleted leaving a complete workable ordinance. The suggested substitute language is merely indicative of what the obligation of the finance director would be to dispose of special purpose moneys."

## II.

Plaintiff first contends that the evidence did not support the conclusion that the district benefited his property, and, therefore, the assessment ordinance must be declared unconstitutional with respect to him. We disagree.

Special assessments, sometimes referred to as local assessments, are ancient devices of English origin designed to finance local public improvements. *See* C. Rhyne, *The Law of Local Government Operations* § 29.2 (1980). *See also Newby v. Platte County,* 25 Mo. 258 (1857). We first addressed issues involving local assessments in the context of a special benefit accruing from a public improvement in *Palmer v. Way,* 6 Colo. 106 (1881). In *Palmer,* a Denver ordinance which assessed owners of lots abutting upon city streets for the cost of constructing sidewalks on the owners' property was upheld as an exercise of

the police power. The decision also stated that such special assessments violated constitutional requirements of uniformity and could not be upheld under the power to impose taxes. In *City of Denver v. Knowles,* 17 Colo. 204, 30 P. 1041 (1892), we rejected the latter portion of *Palmer's* holding in determining that the uniformity clause of the Colorado Constitution, Article 10, Section 3, does not apply to assessments for local improvements.

Special assessments are based on the premise that the property assessed is enhanced in value at least to the amount of the levy. *Pomroy v. Board of Public Water Works,* 55 Colo. 476, 136 P. 78 (1913). Property owners are specially assessed because the benefits they receive from the particular improvements are different from the benefits they enjoy in common with other property owners of the political subdivisions. *Santa Fe Land Improvement Co. v. City & County of Denver,* 89 Colo. 309, 2 P.2d 238 (1931). *See also* 14 E. McQuillin, *The Law of Municipal Corporations* § 38.02 (3d ed. 1970).

■ The authority of municipalities to levy assessments is derived from the sovereign power to tax to pay for public improvements. *City of Englewood v. Weist,* 184 Colo. 325, 520 P.2d 120 (1974). *See also City of Denver v. Knowles, supra.* Such authority is recognized by Article X, Section 7, of the Colorado Constitution,[5] *Ochs v. Town of Hot Sulphur Springs,* 158 Colo. 456, 407 P.2d 677 (1965), and has been delineated by the General Assembly in section 31–20–101, C.R.S.1973 (1977 Repl.Vol. 12),[6] and section 31–25–502, C.R.S.1973 (1977 Repl.Vol. 12).[7] Grand Junction is a home rule city as defined by Article XX, Section 6, of the Colorado Constitution[8] and the Grand Junction Code of Ordinances expressly authorizes the city to make local improvements and assess the cost thereof.[9] The ordinance here contested was duly promulgated pursuant to these statutes and code.

■ An assessment for local improvements must specially benefit or enhance the value of the premises assessed in an amount at least equal to the burden imposed. *Satter v. City of Littleton,* 185 Colo. 90, 522 P.2d 95 (1974); *Santa Fe Land Improvement Co. v. City & County of Denver, supra; Pomroy v. Board of*

---

**5.** Article X, § 7 of the Colorado Constitution states as follows:

"The general assembly shall not impose taxes for the purposes of any county, city, town or other municipal corporation, but may by law, vest in the corporate authorities thereof respectively, the power to assess and collect taxes for all purposes of such corporation."

**6.** Section 31–20–101 states as follows:

"The governing body of any municipality has the power to levy taxes, the same kinds and classes, upon taxable property, real, personal, and mixed, within the municipal limits as are subject to taxation for state or county purposes in accordance with the laws of this state."

**7.** Section 31–25–502 states as follows:

"It is lawful for any municipality to construct any of the local improvements mentioned in this part 5 and to assess the cost thereof, wholly or in part, upon the property especially benefited by such improvements. The improvements shall be authorized by ordinance duly adopted and shall be constructed under the direction of the municipal engineer or

other officer having similar duties or under the direction of the governing body in accordance with plans and specifications adopted by the governing body."

**8.** Article XX, § 6 of the Colorado Constitution states, in pertinent part, as follows:

"The people of each city or town of this state, having a population of two thousand inhabitants as determined by the last preceding census taken under the authority of the United States, the state of Colorado or said city or town, are hereby vested with, and they shall always have, power to make, amend, add to or replace the charter of said city or town, which shall be its organic law and extend to all its local and municipal matters."

**9.** Section 18–1 of the Grand Junction Code of Ordinances states as follows:

"The city shall have power to make local improvements, and to assess the cost thereof wholly or in part upon the property especially benefited, as hereinafter provided."

*Public Water Works, supra.* If no special benefit has been conferred upon the property subjected to the tax, any assessment levied is tantamount to a confiscation of property without due process. *Pomroy v. Board of Public Water Works, supra.*

■■■ In determining whether special benefits exist, findings in assessment proceedings are favorably construed by reviewing courts. *See* 14 E. McQuillin, *supra* at § 38.240. This court has recognized that "the determination of special benefits and assessments is left to the discretion of municipal authorities, and their action is conclusive on the courts unless it appears such was fraudulent or unreasonable." *Orchard Court Development Co. v. City of Boulder,* 182 Colo. 361, 367, 513 P.2d 199, 202 (1973). *See also City of Denver v. Kennedy,* 33 Colo. 80, 80 P. 122 (1904). Thus, the council's determination that benefits specifically accruing to plaintiff's property equal or exceed the amount of the assessment levied upon it is presumed valid, and plaintiff has the burden to establish that the contrary is true. *Satter v. City of Littleton, supra.*

Plaintiff does not challenge the council's authority to impose the assessment, or any of the procedures used to do so. He initially argues that the council's determination that his property was benefited is not supported by any competent evidence, and that the testimony of Hodges was sufficient to overcome any presumption of validity in this case.

■■■ It has long been recognized that in many circumstances a reasonable approximation of benefits conferred, exercised in good faith, is all that can be required in determining assessments. *City of Denver v. Dumars,* 33 Colo. 94, 80 P. 114 (1904). *See also City of Englewood v. Weist, supra.* The city appraiser expressed his opinion that the benefit to plaintiff's property created by the improvements at the least equaled the assessment levied. The basis for that opinion was not expressed in dollar amounts; however, calculations of prospective developmental benefits, which were the primary factors underlying the opinion, need not be couched in specific dollar amounts. *See* 14 E. McQuillin, *supra* at § 38.126. We conclude that the evidence supports the council's ultimate conclusion that plaintiff's property benefited to an extent at least equal to the amount of the special assessment levied against it.

## III.

Plaintiff also contends that the trial court erred in concluding that a portion of the assessment ordinance could be severed from the ordinance. We agree that the trial court erred in apparently suggesting that express terms of section 7 of the ordinance could be altered, but because we conclude that the entire section is severable as a matter of law, we find the error to be harmless.

■■■ Revenues generated from a special assessment must be "used and confined to payment for the capital improvement resulting in an equivalent benefit to" the taxpayers' properties. *Ochs v. Town of Hot Sulphur Springs,* 158 Colo. at 460, 407 P.2d at 679. The rule that special assessment funds cannot be diverted to other purposes is based in part on the principal that the imposition of special taxes upon a particular class of taxpayers can be justified only to the extent such taxes are equivalent to special benefits conferred upon those taxpayers. The portion of section 7 of the ordinance authorizing the use of any surplus special assessment funds for general improvement projects conditionally contravenes these prohibitions. Such authorization relates to the central purpose of the section—disposition of surplus funds—and this defect is so pervasive that invalidation of section 7 in its entirety is required. *Cf. City of Lakewood v. Colfax Unlimited Association,* 634 P.2d 52 (Colo. 1981) (constitutional defects in sign ordinance required invalidation in entirety). To

the extent the trial court's order may be read as an effort to rephrase the offending language in section 7, it violates the proposition that courts should not interpret statutes or ordinances to mean that which they do not express.[10] *See Rancho Colorado, Inc. v. City of Broomfield,* 196 Colo. 444, 586 P.2d 659 (1978). Here, section 7 expressly authorized the city council to use excess funds for any purpose it could envision; it did not authorize proportional distribution of excess funds to the assessed property owners. Therefore, the trial court's attempt to alter the express terms of the section to effectuate such a purpose was improper.

■■■■■■ The fact that section 7 is invalid, however, does not render the entire ordinance invalid. This court has repeatedly recognized that when parts of a statute are found to be unconstitutional, the remaining parts of the legislation can be severed if the latter are complete in and of themselves and are not dependent on unconstitutional provisions for their efficacy. *Shroyer v. Sokol,* 191 Colo. 32, 550 P.2d 309 (1976); *Covell v. Douglas,* 179 Colo. 443, 501 P.2d 1047 (1972), *cert. denied,* 412 U.S. 952, 93 S.Ct. 3000, 37 L.Ed.2d 1006 (1973). This salutary principle of statutory construction is recognized by the General Assembly in section 2-4-204, C.R.S.1973 (1980 Repl.Vol. 1B). The principle, which gives proper effect to permissible legislative action while granting full protection to citizens against unconstitutional exercise of legislative authority, applies with equal vigor to city charters and ordinances. *See, e.g., Greeley Police Union v. City Council,* 191 Colo. 419, 553 P.2d 790 (1976); *City of Pueblo v. Kurtz,* 66 Colo. 447, 182 P. 884 (1919). *See also* 6 E. McQuillin, *The Law of Municipal Corporations* § 20.64 (3d ed.

1980). Therefore, a municipal ordinance, void only as to a part which can be clearly separated and distinguished, and which, when the void portion is rejected, still remains complete within itself, may be sustained by the rejection of the void portion of the ordinance. *Vinsonhaler v. People,* 48 Colo. 79, 108 P. 993 (1910).

■■■■ Section 7 deals with a contingency which would arise if excess funds are created by the operation of the other sections of the ordinance. Those other sections, however, are not dependent in any manner upon section 7's provisions and remain self-executing in the absence of section 7. We conclude that section 7 is independent of the remainder of the ordinance and, therefore, may be severed from the ordinance without invalidating the other provisions thereof.

The judgment of the trial court is affirmed.

---

**10.** The trial court's judgment is ambiguous with regard to this issue. The order states that section 7 provides for the distribution of funds "in an unconstitutional way," but that such taint is "unsubstantial." It also states that any unconstitutional taint in section 7 may be "correct[ed]" by deleting a portion of that section "or by substituting therefor" certain language. Finally, the order states the "suggested substitute language" is merely illustrative. Because we conclude that section 7 in its entirety must be severed from the ordinance, we do not attempt to resolve these ambiguities.