**Morris ZELINGER and Thelma Zelinger, David Goldstein and Sylvia Goldstein; General Air Service & Supply; Wazee Electric Co.; Advance Neon Sign Company; Abe L. Hoffman and Florence Hoffman; Denver Motel Enterprises, Inc.; by themselves and on behalf of all other persons similarly situated, Plaintiffs-Appellants,**

v.

**The CITY AND COUNTY OF DENVER, a municipal corporation of the State of Colorado; the City Council of the City and County of Denver and Its Members, Individually and as Council-Persons; and Harold V. Cook, as Manager of Public Works of said City and County of Denver, Defendants-Appellees.**

No. 84SA508.

Supreme Court of Colorado, En Banc.

Sept. 8, 1986.

Goldstein & Armour, P.C., James H. Downey, Alan A. Armour, Denver, for plaintiffs-appellants.

Stephen H. Kaplan, City Atty., Steven J. Coon, Asst. City Atty., Denver, for defendants-appellees.

VOLLACK, Justice.

Plaintiffs-appellants, members of a class action suit, appeal the judgment of the district court upholding the constitutionality of the City and County of Denver Municipal Ordinance No. 160, Series of 1980 [hereinafter referred to as "Ordinance"]. The plaintiffs-appellants claim the Ordinance, which deals with storm drainage facilities and the fees and service charges therefor, unconstitutionally denies equal protection and due process guarantees to property owners. They also contend the Ordinance is an unconstitutional property tax. We disagree and affirm the district court.

### I.

In 1980, the City Council of Denver enacted Ordinance 160. It includes a provision for a service charge to all owners of

property in the County to pay for the operation, maintenance, improvement and replacement of the City's storm drainage facilities. The charge is based on the ratio of impervious to pervious land surface. Impervious surface is surface which has been improved so it no longer absorbs and delays rainfall runoff. The higher the ratio of impervious to pervious surface, the greater the charge per square foot.[1] The Ordinance also sets a minimum service charge of $3.70 for each lot on which there is impervious surface.

Plaintiffs-appellants are owners of residential and commercial properties within the City and County of Denver. They appear on behalf of themselves and other similarly situated property owners who have paid, or may be required to pay, storm drainage charges pursuant to the Ordinance. The trial court certified this matter as a class action, and notice was given by publication. None of the parties disputed any issues of fact and, pursuant to stipulation, the trial court treated the matter as if cross motions for summary judgment had been filed based upon a purely facial challenge to the Ordinance.

The trial court held that the Ordinance was rationally related to a legitimate state purpose of financing the maintenance and construction of new storm sewers. It also held that the Ordinance was a service charge and not an unconstitutional tax. We affirm.

## II.

■ The plaintiffs argue that the storm drainage service charge is a nonuniform tax in violation of article X, section 3, of the Colorado Constitution, which provides that "[a]ll taxes shall be uniform upon each of the various classes of real and personal property located within the territorial limits of the authority levying the tax...." We have long recognized that the uniformity requirement of article X, section 3 applies only to ad valorem property taxes. *See, e.g., Cherry Hills Farms, Inc. v. City of Cherry Hills Village*, 670 P.2d 779 (Colo. 1983); *Ochs v. Town of Hot Sulphur Springs*, 158 Colo. 456, 407 P.2d 677 (1965); *Public Utilities Commission v. Manley*, 99 Colo. 153, 60 P.2d 913 (1936); *Denver City Railway v. City of Denver*, 21 Colo. 350, 41 P. 826 (1895). A hallmark of such taxes is that they are intended to raise revenue to defray the general expenses of the taxing entity. *See Ochs*, 158 Colo. at 460, 407 P.2d at 679–80; *Western Heights Land Corp. v. City of Fort Collins*, 146 Colo. 464, 362 P.2d 155 (1961).

■ "Special assessments" are not included within the coverage of the uniformity clause of article X, section 3. Special assessments are charges imposed for the purpose of financing local improvements. To qualify as a special assessment, a charge must be directed against the users of an improvement, and the revenue derived from the charge must be applied only to the maintenance, operation, or development of the improvement. *See Reams v. City of Grand Junction*, 676 P.2d 1189 (Colo.1984); *Ochs*, 158 Colo. at 460, 407 P.2d at 679–80.

In *Loup-Miller Const. Co. v. City and County of Denver*, 676 P.2d 1170 (Colo.

---

**1.** Depending on the ratio of impervious to pervious land surfaces, the Ordinance places properties in one of ten "ratio groups." Correlated with each ratio group is a charge for each one hundred square feet of impervious surface on the property. The method for calculating the charge thus involves 1) determining the ratio of impervious to pervious surface on a parcel of land; 2) assigning the parcel to the appropriate ratio group; and 3) multiplying the drainage service charge per one hundred square feet by the number of one hundred square foot units of impervious surface on the property. § .5–2.

The ratio groups and their associated charges are set out in section .6 as follows:

| Ratio Group | | Rate of Charge (Per 100 square feet of impervious surface) |
|---|---|---|
| 0 to | .10 | $0.37 |
| .11 to | .20 | 0.47 |
| .21 to | .30 | 0.57 |
| .31 to | .40 | 0.67 |
| .41 to | .50 | 0.77 |
| .51 to | .60 | 0.77 |
| .61 to | .70 | 0.87 |
| .71 to | .80 | 0.97 |
| .81 to | .90 | 1.07 |
| .91 to | 1.00 | 1.17 |

1984), we held that the sanitary sewer charge "ordinances did not impose taxes, but set fees, as authorized by section 31–35–402(1)(f), C.R.S. (1977, Repl. Vol. 12) and section C4.12 of the Denver Charter. ('The council shall fix the rates for the service to be rendered by each such public utility....')." *Id.* at 1175–76. Here, the City of Denver relies on precisely the same statute and charter provision as was relied upon in *Loup-Miller.* In *City of Arvada v. City and County of Denver,* 663 P.2d 611 (Colo.1983), we held that while the imposition of a development fee as such was not authorized in section 31–35–402(1)(f), 12 C.R.S. (1977), such a charge was within the general contemplation of this "broadly worded statute." *Id.* at 614. Furthermore, we stated that:

> [T]he General Assembly intended to give municipalities broad, general powers to construct, improve and extend all the facilities necessary to operate a viable water system, and that this power includes authorization to accumulate a fund for future development. There is no indication that municipalities are limited to the use of revenue bonds to finance future acquisition and construction.

*Id.* at 615.

The Ordinance in question does not raise revenue for general municipal purposes as a sole or principal objective. The use of funds raised by the storm drainage service charge is restricted by the following language in the Ordinance:

> .12–1. All fees and charges paid and collected pursuant to this Article shall be segregated, credited and deposited in a special fund or funds, and shall not be transferred therefrom to any other account of the City, except to pay for expenses directly attributable to storm drainage activities.

> .12–2. The fees and charges paid and collected by virtue of this article shall not be used for general or other governmental or proprietary purposes of the City, except to pay for the equitable share of the costs of accounting, management, and government thereof. Instead, the fees and charges shall be used, other than as described above, solely to pay for the costs of the operation, repair, maintenance, improvement, renewal, replacement and reconstruction of storm drainage facilities in the City and the costs incidental thereto.

Ordinance at .12–1 and at .12–2 respectively.

■ We hold that the storm drainage service charge is not a tax.

### III.

■ Plaintiffs-appellants also contend the Ordinance violates due process and equal protection guarantees. Plaintiffs' argument focuses on the fact that under the scheme established by the Ordinance, landowners with equal areas of impervious land surface on their property may be liable for different service charges depending on the ratio of impervious to pervious surface. In addition, as the plaintiffs point out, the ratio groupings will sometimes result in the same charge being assessed in connection with parcels of land having different ratios of impervious to pervious surface. The plaintiffs contend that the ratio groupings are therefore arbitrary and discriminatory. The minimum service charge is challenged on similar grounds. Of the three levels of review used to analyze equal protection challenges, *see Austin v. Litvak,* 682 P.2d 41 (Colo.1984), in this case the appropriate standard is the rational basis test. The classification established by the Ordinance neither adversely affects any fundamental right or disadvantages a suspect class, nor does it implicate any value associated with the "intermediate" level of review. *See e.g., Craig v. Boren,* 429 U.S. 190, 97 S.Ct. 451, 50 L.Ed.2d 397 (1976). The Ordinance must be sustained against an equal protection challenge if it "has some rational basis in fact and bears a rational relationship to legitimate governmental objectives." *Industrial Commission v. Adams County Board of Commissioners,* 690 P.2d 839,

**1360** ■

847 (Colo.1984).[2]  The governmental interest in maintaining and improving storm drainage facilities in Denver is unquestioned.

The possibility that some landowners with the same amount of impervious land surface on their property will be assessed different charges is not an anomalous consequence of the fee scheme. Rather, the differential charges are the intended result of a fee schedule premised on the recognition by experts that while total impervious surface area is a good indicator of the amount of water that can be expected to reach the storm drain system after a storm, because of the capacity of pervious land surface to absorb water, the ratio of impervious to pervious surface is a more accurate indicator of storm drainage costs associated with a particular parcel of land.

■ The plaintiffs urge that the amount of impervious land surface should be the sole determinant of a storm drainage service charge. They also assert that adjustments to the service charge scheme could reflect more closely differences in the ratio of impervious to pervious land surface, as well as other relevant differences among parcels of land. However, although alternative cost allocation schemes may be equally well-suited or arguably better suited to serving the governmental interest in providing storm drainage facilities than the scheme actually adopted, the equal protection clauses do not authorize the invalidation of the scheme chosen unless it is without rational foundation. *See Loup-Miller,* 676 P.2d 1170. We conclude the Ordinance is rationally related to the legitimate governmental interest of operating, maintaining, improving and replacing the City's storm drainage facilities. The Ordinance does not violate equal protection of the laws.

Judgment affirmed.

**2.** For purposes of resolving the question presented here, the requirements of due process are coextensive with those of equal protection.

*See Chiappe v. State Personnel Board,* 622 P.2d 527 (Colo.1981).