QUESTION PRESENTED AND CONCLUSION
Is an increase in the surcharge rate imposed upon issuers of workers' compensation insurance in the State of Colorado, pursuant to the provisions of section 8-44-112(1)(a), C.R.S. (1992 Cum. Supp.), above the surcharge rate charged to such issuers preceding the passage of Amendment 1, the "Taxpayer's Bill of Rights", a "new tax" subject to voter approval pursuant to the provisions of Amendment 1?
The Workers' Compensation Premium Surcharge contemplated by the provisions of section 8-44-112, C.R.S. (1992 Cum. Supp.), is a "fee," and therefore not subject to the provisions of Amendment 1.
ANALYSIS
On November 3, 1992, Colorado's citizens adopted Amendment 1 to the state constitution. The amendment, which now appears as Article 10, Section 20 of the Colorado Constitution, is commonly referred to as TABOR (the "Taxpayers' Bill Of Rights"). The amendment states in pertinent part that starting November 4, 1992, districts, including the State, must have advance voter approval for:
any new tax, tax rate increase, mill levy above that for the previous year, valuation for assessment ratio increase for a property class, or extension of an expiring tax, or a tax policy change directly causing a net tax revenue gain to any district.
Colo. Const. art. 10, § 20(4).
The question presented is whether an increase in the Workers' Compensation Premium Surcharge rate authorized under section8-44-112, C.R.S. (1992 Cum. Supp.) is one of those taxing events contemplated by subsection (4).
Section 8-44-112(1)(a), C.R.S. (1992 Cum. Supp.) provides:
Notwithstanding the provisions of sections 10-3-209(1)(c) and10-6-128(3), C.R.S. for the purpose of offsetting the direct and indirect costs of the administration of the workers' compensation system, every person, partnership, association, and corporation, whether organized under the laws of this state or any other state or country, every mutual company or association, and every other insurance carrier, including the Colorado compensation insurance authority, insuring employers in this state against liability for personal injury to their employees or death caused thereby under the provisions of the "Workers' Compensation Act of Colorado" shall, as provided in this section, pay a surcharge upon the premiums received, whether in cash or not, in this state, or on account of business done in this state, at a rate established by the director by rule, which surcharge shall be reviewed and adjusted annually based upon appropriations made for the direct and indirect costs of the administration of the workers' compensation system, as provided in subsection (7) of this section.
Funds collected pursuant to the provisions of section8-44-112(1)(a), C.R.S. (1992 Cum. Supp.) are collected as a supplement to annual legislative appropriations to the Division of Workers' Compensation, and like annual appropriations, are used to offset the " direct and indirect costs of the administration of the workers' compensation system." Such costs could include any costs associated with administering the workers' compensation system including things such as salaries, costs of supplies and equipment, rent, etc.
The funds collected pursuant to the surcharge are placed in the workers' compensation cash fund, a special fund created specifically for the statute's stated purpose. The workers' compensation cash fund is separate and apart from the general fund. Funds collected pursuant to the provisions of the statute are used only for the stated purposes in the statute. If any funds remain in the workers' compensation cash fund at years end, they do not revert to the general fund. Moreover, monies placed in the workers' compensation cash fund are not subject to any management fees which may otherwise be imposed by law on other state funds for the benefit of the general fund.
As noted above, it is the opinion of this office that the Workers' Compensation Premium Surcharge is an exempt "fee" rather than a "tax" subject to Colo. Const. art. 10, § 20(4).
I. State Law.
In Bloom v. City of Fort Collins, 784 P.2d 304 (Colo. 1989), a group of land owners sued the City of Fort Collins seeking invalidation of a "transportation utility fee" imposed by city ordinance for the purpose of providing revenues for the maintenance of local streets. The particular ordinance at issue also contained a "transfer provision" which authorized the city to transfer unspent revenues derived by operation of the ordinance, "to any other fund of the city." The land owners alleged that the "transportation utility fee" was an invalid property tax which did not conform to the uniformity requirement of article X, section 3 of the Colorado Constitution.
The Colorado Supreme Court ruled in Bloom that the transportation utility fee imposed by the city was in fact a special fee "reasonably related to the expenses incurred by the city in carrying out its legitimate goal of maintaining an effective network of city streets." However, the Bloom
Court invalidated the transfer provision to the extent that it could transform the valid "fee" into an impermissible "tax."
In reaching its conclusion, the Bloom Court examined each of the means by which a municipality may raise revenues, and compared those means with the transportation utility fee at issue. Those several means utilized by municipalities are as follows: Ad valorem tax; excise tax; special assessment; and, special fee.
An ad valorem tax, the Bloom Court noted, is a tax imposed:
 [U]pon various classes of real and personal property located within the territorial limits of the taxing authority. See Cherry Hills Farms v. City of Cherry Hills, 670 P.2d 779, 782 (Colo. 1983); Ochs v. Town of Hot Sulphur Springs, 158 Colo. 456, 459, 407 P.2d 677, 679 (1965). Its purpose is to provide revenues in order to defray the general expenses of government as distinguished from the expense of a specific function or service. Zelinger v. City and County of Denver, 724 P.2d 1356, 1358 (Colo. 1986); Western Heights Land Corp. v. City of Fort Collins, 146 Colo. 464, 469, 362 P.2d 155, 158 (1961); Ochs, 158 Colo. at 459, 407 P.2d at 679.
Bloom, supra at 307. (emphasis supplied).
In contrast, the Bloom Court noted that an excise tax is not based upon the assessed value of the property subject to the tax, rather it is imposed upon a particular "act, event, or occurrence." The purpose of an excise tax, like that of an ad valorem tax, is to:
 [P]rovide revenue for the general expenses of government, but, unlike the ad valorem property tax, the payment of the excise tax is made a condition precedent to the act, event, or occurrence on which the tax is based. Cherry Hills Farms, 670 P.2d at 782.
Bloom, supra at 308. (emphasis supplied).
On the other hand, a "special assessment," as distinguished from the ad valorem and excise taxes, is "based upon the premise that the property assessed is enhanced in value at least to the amount of the levy."
 The funds generated by a special assessment cannot be diverted to other purposes, since the imposition of the assessment "upon a particular class of taxpayers can be justified only to the extent that such taxes are equivalent to special benefits conferred upon those taxpayers."
Bloom, supra at 308. (emphasis supplied).
Finally, with respect to a special "fee" the Bloom
Court noted:
 Unlike a tax, a special fee is not designed to raise revenues to defray the general expenses of government, but rather is a charge imposed upon persons or property for the purpose of defraying the cost of a particular governmental service. See 1 T. Cooley, The Law of Taxation 33 (4th Ed. 1924); O. Reynolds, Jr., Local Government Law 105. The amount of the special fee must be reasonably related to the overall cost of the service. See Western Heights Land Corp., 146 Colo. at 464, 468-69, 362 P.2d at 158; O. Reynolds, Jr., Local Government Law 105. Mathematical exactitude, however, is not required, and the particular mode adopted by a city in assessing the fee is generally a matter of legislative discretion. See Western Heights Land Corp. 146 Colo. at 466-67, 362 P.2d at 155. An ordinance creating a special fee, therefore, generally will be upheld as long as the ordinance is reasonably designed to defray the cost of the particular service rendered by the municipality.
Bloom, supra at 308. (emphasis supplied).
In this instance the Bloom Court found that the transportation utility fee was a "special fee" because: (1) Its purposes were limited to the extent that they were specifically intended to defray expenses connected with the operation and maintenance of city streets, or a specific governmental purpose, rather than general governmental services (ad valorem or excise tax); (2) the fee was not based upon the assessed value of property (ad valorem tax); (3) the fee was not conditioned on the performance of an act, event, or occurrence (excise fee); and, (4) the amount of the fee was not utilized to pay for improvements benefiting the particular property on which the fee was imposed (special assessment).
However, noting that:
 [t]he transfer of a substantial amount of money generated by the transportation utility fee to some other city fund would be tantamount to requiring the class of persons responsible for the fee — the owners or occupants of developed lots fronting city streets — to bear a disproportionate share of the burden of providing revenues to defray general governmental expenses unrelated to the purpose for which the fee is imposed . . .
the Bloom Court ruled that the transfer provision in the ordinance was invalid, and severed it from the remainder of the ordinance.
Based upon the Colorado Supreme Court's analysis and ruling in Bloom, including the cases cited therein, it would appear that the workers' compensation premium surcharge set forth in section 8-44-112(1)(a), C.R.S. (1992 Cum. Supp.), is in fact a "special fee." The workers' compensation premium surcharge is not an "ad valorem tax" in that it is not based upon a class or number of classes of real or personal property. It is not an "excise tax" in that it is not dependent upon the performance of some act, event or occurrence. It is not a "special assessment" in that there is no property being assessed which may be "enhanced in value at least to the amount of the levy."Bloom, supra at 308.
Moreover, it is not an "ad valorem" or "excise" tax because its purpose is not to defray general governmental expenses. Rather the specific purpose of the workers' compensation premium surcharge is to defray or offset direct and indirect costs associated with the administration of the workers' compensation system in the state of Colorado.
In order to assure that this specific purpose is met, the provisions of subsection (7) of section 8-44-112, C.R.S. (1992 Cum. Supp.) specifically provide that any moneys earned or deposited in the "Workers' Compensation Cash Fund," a fund created in the State Treasury for the specific purpose of collecting proceeds from the workers' compensation premium surcharge, "shall remain in the fund and shall not revert to the general fund of the state at the end of any fiscal year. In addition,
 No investment earnings or other moneys in the workers' compensation cash fund shall be subject to any management fee imposed by law for the benefit of the general fund.
Section 8-44-112(7), C.R.S. (1992 Cum. Supp.).
It was clearly the Legislature's intent, in establishing the "Workers' Compensation Cash Fund" and the workers' compensation premium surcharge, that any moneys derived therefrom would be segregated from the State's general fund for purposes of providing specific appropriations to offset the administrative costs of operating the Colorado workers' compensation system.
II. Federal Law.
Federal case law delineates the "fee/tax" issue on the basis of whether the charges paid are done so voluntarily and whether there is a direct benefit bestowed upon the payor of the charge which is not generally realized by the public at large.[1]
In National Cable Television Ass'n v. United States,415 U.S. 336, 340-41 (1974), the Supreme Court held:
 Taxation is a legislative function and Congress, which is the sole organ for levying taxes, may act arbitrarily and disregard benefits bestowed by the government on a taxpayer and go solely on ability to pay, based upon property or income. A fee, however, is incident to a voluntary act, e.g., a request that a public agency permit an applicant to practice law or medicine or construct a house or a broadcast station. The public agency performing those services normally may exact a fee for a grant which, presumably, bestows a benefit on the applicant not shared by other members of society.
(emphasis supplied).
In further defining the issue of who a benefit is bestowed upon, the Supreme Court, contemporaneously with the NationalCable Television decision, ruled in Federal PowerComm'n v. New England Power Co., 415 U.S. 345, 350 (1974) that a charge will most often be a tax:
 [W]hen the identification of the ultimate beneficiary is obscure and the service can be primarily considered as benefiting broadly the general public.
Although an insurance carrier may be licensed in Colorado to sell many types of insurance products, any such carrier who wishes to issue workers' compensation insurance to employers in Colorado must pay the workers' compensation premium surcharge.[2]
Section 8-44-106, C.R.S. (1992 Cum. Supp.) provides that if a carrier authorized to issue workers' compensation insurance in Colorado fails to pay, or chooses not to pay the workers' compensation premium surcharge, that non-paying carrier's license to issue workers' compensation insurance in Colorado will be revoked or suspended by the commissioner of insurance. Such a revocation, however, will have no effect on the particular non-paying carrier's ability to continue selling other insurance products in the state.
In this respect, it is clear that insurance carriers who choose to pay the workers' compensation premium surcharge derive a direct economic benefit from doing so by purchasing what amounts to a license to sell workers' compensation insurance in Colorado. Moreover, the benefit derived by carriers is closely proportional to the amount of surcharge paid: The more premium dollars collected by a particular carrier, the more surcharge dollars that carrier pays towards the workers' compensation cash fund. In that context, the workers' compensation premium surcharge appears even less likely to be a "tax." SeeWestrac, Inc. v. Walker Field, 812 P.2d 714, 716
(Colo.App. 1991) (Taxes are not ordinarily based on amount of use), andBloom v. City of Fort Collins, 784 P.2d 304, 308 (Colo. 1989) (Amount of special fee must be reasonably related to the overall cost of the service).
Furthermore, carriers paying the workers' compensation premium surcharge derive a direct benefit to their profit margins from the existence of an efficiently administered workers' compensation system which encourages the disposition of claims in the absence of litigation and administration costs which would otherwise be paid from the pocket of the carrier as part of its overhead cost of doing business.
Finally, insurance carriers derive a direct benefit in terms of limited liability under the workers' compensation system. In the absence of the workers' compensation system, employers and carriers alike would face the risk of judgments in excess of policy limits under various theories of tort brought by injured workers, including actions such as bad faith.
Even if the argument prevails that the system of administration funded by the surcharge in this instance was intended to benefit the general public, Colorado case law is settled that a "fee" does not become a "tax" because others who are not required to pay a particular fee or charge in fact derive a benefit from the service provided. In Westrac, Inc.v. Walker Field, 812 P.2d 714 (Colo.App. 1991), a rental car company challenged a user's fee imposed by Walker field, a public airport facility in Grand Junction, Colorado, as being an unconstitutional "tax" or an impermissible "fee." There, the Court of Appeals held that:
 Rates charged for use of a public facility owned by a municipal corporation ordinarily are not considered taxes because their purpose is to defray the expense of operating and improving the facility and because they are imposed only upon those using the service provided. Taxes, on the other hand, are not based on the amount of use, and the proceeds are used to defray general municipal expenses.
There, the rental car company was required to pay the fee. Others, however, derived a benefit by the payment of the fee. For instance, the general public who chooses to utilize the services of the rental car agency derive a benefit from the very existence of the agency on the premises of the airfield. Yet the general public is not required to pay the user's fee. Moreover, there was no discussion on the Court's part as to whether the fee was actually passed through to the paying customer.
In this instance the same analogy may be applied to the payment of the workers' compensation premium surcharge by insurance carriers wishing to issue policies of workers' compensation insurance in the State of Colorado. The surcharge is paid "to defray the expense of operating and improving" the system for the administration of workers' compensation in the State of Colorado. The surcharge is imposed only upon those carriers who wish to avail themselves of that system of administration by choosing to issue policies of workers' compensation in Colorado. Yet, the public, or at least those injured workers and employers who must avail themselves on the workers' compensation system, also derives a benefit by payment of the surcharge by insurance carriers. This benefit to the public, however, is no different than that derived by the public who chooses to avail itself upon the services provided by the rental car company in Westrac, Inc. v. WalkerField, id.
III. Taxing Authority of the Director.
Finally, it is clear that the Director for the Division of Workers' Compensation has no authority to impose a "tax." It is well settled that taxation is a legislative prerogative.Gates Rubber Co. v. South Suburban MetropolitanRecreation and Park Dist., 516 P.2d 436 (Colo. 1973).
 The powers of the government of this state are divided into three distinct departments, . . . legislative, executive and judicial; and no person or collection of persons charged with the exercise of powers properly belonging to one of these departments shall exercise any power properly belonging to either of the others, except as in this constitution expressly directed or permitted.
Colo. Const. art. III.
 By this article the people have delegated to each Department certain powers and have expressly prohibited one department from trespassing and encroaching upon the powers and duties delegated to the other. To each of these departments has been delegated such portion of the sovereignty as was deemed expedient by the framers of the constitution, and while collaboration between the departments is not expressly prohibited, and sometimes expressly enjoined by the Constitution, yet one cannot divest itself nor transfer to another the power and authority expressly granted it by the Constitution.
Watrous v. Golden Chamber of Commerce, 121 Colo. 521,218 P.2d 498 (1950).
Unless there is some direct statutory delegation by the General Assembly which allows the Director of the Division of Workers' Compensation to impose a tax, and unless there are sufficiently stringent guidelines regarding the manner in which the tax is imposed,[3] See Weissingerv. Boswell, 330 F. Supp. 615 (D. Ala. 1971), he is precluded from doing so as an officer of the executive branch. We should infer that the General Assembly was mindful of these restrictions on the delegation of taxing authority when the Workers' Compensation Act was promulgated.
SUMMARY
The surcharge imposed by section 8-44-112(1)(a), C.R.S. (1992 Cum. Supp.) is a "fee" rather than a "tax." Any increase in the surcharge rate from year to year is therefore not subject to voter approval pursuant to the provisions of Amendment 1.
 GALE A. NORTON Attorney General
 JAMES C. KLEIN Assistant Attorney General
PREMIUM SURCHARGE WORKERS' COMPENSATION INSURANCE COLORADO WORKERS' COMPENSATION ACT
Section 8-44-112, C.R.S. (1992 Cum. Supp.) Section 8-44-112(1)(a), C.R.S. (1992 Cum. Supp.)
Colo. Const. art. X, § 20
Labor and Employment, Dept. of
It is this offices' opinion that the surcharge imposed by section8-44-112(1)(a), C.R.S. (1992 Cum. Supp.) is in fact a "fee" rather than a "tax." Any increase in the surcharge rate from year to year is therefore not subject to voter approval pursuant to the provisions of Amendment 1.
[1] The analysis utilized by the Colorado Courts has always turned on the fact of whether particular fees were "reasonably designed to offset the overall cost of services for which the fees were imposed." Bloom v. City of FortCollins, 784 P.2d 304, 310 (Colo. 1989) Colorado has never focused on whether the particular fee was "voluntary," recognizing that the inherent nature of some "fees" excludes a characterization of them as "voluntary" due to the non-availability of services from nongovernmental sources. However, in this instance, the payment of the surcharge is to a certain extent voluntary. Every insurance carrier with an active workers' compensation insurance business in Colorado, with the exception of the Colorado Compensation Insurance Authority, issues various types of insurance products in Colorado in addition to issuing workers' compensation insurance. Failing to pay the surcharge has no effect on those carrier's ability to continue to sell other types of insurance in Colorado. Payment of the surcharge is simply a license to issue workers' compensation insurance in addition to their traditional insurance business.
[2] The Colorado Compensation Insurance Authority is the only insurance carrier doing business in Colorado which exclusively issues workers' compensation insurance. Every other carrier doing business in Colorado issues, or has available for issuance, a variety of insurance products.
[3] Under the provisions of section 8-44-112, C.R.S. (1992 Cum. Supp.), the Director of the Division of Workers' Compensation has unfettered authority to set the rate of surcharge on a year to year basis pursuant to rule.